No. 20,214.

Harold J. Miller *v.* Lawrence Carmody, et al.
(384 P. [2d] 77)

Decided May 27, 1963. Rehearing denied August 19, 1963.

354

Mr. THOMAS J. MITCHELL, for plaintiff in error.

Messrs. GIRSH & ROTTMAN, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

MILLER brought suit against Lawrence and Mary Ellen Carmody on an option agreement, Miller being the optionee and Carmodys the optionors. After answering the complaint, the Carmodys filed a motion for summary judgment, with several affidavits in support thereof. Miller filed two affidavits in opposition to this motion. After argument the trial court granted the motion and dismissed Miller's several claims for relief. By the present writ of error Miller seeks reversal of the judgment of dismissal.

Before proceeding to analyze the various pleadings and the several affidavits filed in connection with the motion for summary judgment, it is deemed advisable at this juncture to consider the option agreement.

The option agreement, signed by Miller and the Carmodys on October 10, 1959, provided, inter alia, that for a consideration of $5,000 the Carmodys "do hereby grant unto Miller . . . the option to purchase . . . [from the Carmodys] on or before October 10, 1960" certain described land in Jefferson County, the property being approximately 235 acres. The agreement went on to provide that "if, on or before September 10, 1960, the said purchaser, his heirs or assigns, shall notify sellers

in writing of his intention to exercise said option, and shall on or before October 10, 1960 make a further payment unto sellers of a sum equal to 20% of the total purchase price, sellers do hereby agree . . . to execute and deliver unto said purchaser a . . . warranty deed . . ."

In this option contract Miller agreed "to pay for the property at the rate of $1,100 per acre, the total purchase price being determined by multiplying by $1,100 the exact acreage of the property above described . . . and deducting therefrom at the rate of $500 per acre for each and every acre constituting Carmody Lake."

This agreement further provided that simultaneously with the execution and delivery of the warranty deed, Miller agreed to execute and deliver to the Carmodys a promissory note for the unpaid balance of the purchase price and a deed of trust securing payment of the same. In regards to this contemplated deed of trust it was "further agreed and understood that upon exercise of the option any and all monies paid . . . by . . . [Miller] . . . to . . . the [Carmodys] shall allow . . . [Miller] . . . to obtain title unencumbered to the amount of acreage paid for at the rate of $1,100 per acre and the trust deed . . . shall not include such acreage; provided, however, that the location of such acreage shall be determined by mutual agreement of the seller and purchaser."

Proceeding then to a consideration of the pleadings, Miller in the first claim of his amended complaint alleged that on or about October 10, 1959, he and the defendants entered into an option agreement whereby he agreed to buy and the Carmodys agreed to sell 235 acres of land situate in Jefferson County; that he has performed all of the terms and conditions of the "said option agreement on his part to be performed and stands ready, willing and able to make tender of the sum required by him to be paid as decreed by this Court, pursuant to and in accordance with the terms of said option agreement"; and that upon payment by him to the Carmodys "of the purchase price ascertained by the

Court with reference to the option agreement between the parties," the Carmodys be ordered to convey to him the aforementioned 235 acres.

In what he chose to denominate as a second claim, Miller alternatively asked for damages in the amount of $329,000, in the event specific performance could not be had, this sum allegedly representing the difference between the purchase price called for in the agreement and the appreciated market value of the land as of the time the Carmodys "refused to convey."

In his third and last claim for relief Miller alleged that he had fully performed all of the acts required of him by the option agreement, "except such acts which, because of the defendants' breaches . . . [he] was prevented from performing"; that the defendants, inter alia, "have drained water from . . . Carmody Lake for the sole purpose of exacting a higher price from . . . [Miller] than that originally agreed upon . . ."; that if neither "specific performance nor damages for breach of contract can be had," the aforementioned option agreement should "be rescinded and rendered null and void" and the defendants ordered to pay Miller the amount of $29,402.41, this sum representing monies paid by Miller for engineering services, advertising, promotion, lawyer's fees, and the like, all "in reliance upon defendants promised performance."

By their answer the Carmodys admitted that an option agreement was entered into on October 10, 1959, whereby Miller was given an option to buy 235 acres owned by them, denied that Miller "had performed [all] the terms and conditions of the option," pled that the option agreement specifically "required, inter alia, the payment by . . . [Miller] on or before October 10, 1960 of 20% of the total purchase price of the property" and alleged that Miller failed to make the aforesaid payment, nor did he make any tender thereof.

Thereafter the Carmodys filed a motion for summary judgment, alleging that there was no genuine issue as

to any material fact and that the pleadings and the affidavits filed in support of the motion showed that they were entitled to judgment in their favor as a matter of law.

The affidavits of the Carmodys, together with one from their son, Lawrence, Jr., were filed in support of the motion for summary judgment. The gist of each affidavit was that on October 10, 1960, Miller came to the Carmody home in Jefferson County and exhibited a plat whereon he had indicated the acreage which he desired transferred to him unencumbered by any deed of trust; that controversy then arose for the reason that the Carmodys felt Miller had picked out the most valuable acreage to be free from the deed of trust, whereas the agreement expressly stated that the acreage to be unencumbered by any deed of trust was to be mutually agreed upon by the parties; that accordingly they felt that such unencumbered acreage should be representative of the entire 235 acres; and that there was some minor discussion regarding the size of Carmody Lake, drainage of the lake, the "no trespass" signs which had been posted on the premises, but that in any event Miller did not at any time pay, or offer to pay, "the amount which was then payable under the option, or any portion thereof."

In opposition to the motion for summary judgment both Miller and his wife filed similar affidavits, Miller making no allegation of timely payment of a sum equal to 20% of the total purchase price, or any tender thereof, but as his excuse for not so doing averring that "at all times . . . [I have] been ready, willing and financially able to comply with the terms of the agreement and exercise the option, but I have been thwarted in this because the Carmodys refused to consummate the transaction except on the basis that Carmody Lake be less than 26 acres." Miller stated in his affidavit that he wanted to consummate the transaction on the basis that Carmody Lake was 26 acres, which was what his

survey of March 1960 showed it to be, but that the Carmodys informed him that in their opinion the lake had been shrinking in size to the point that as it was then only 10 acres in size.

After extended argument the trial court granted Carmodys' motion for summary judgment, concluding that Miller did not comply with the provision of the option contract which required him to make payment of a sum equal to 20% of the total purchase price on or before October 10, 1960, and further that from the affidavits it was quite evident that Miller was in nowise prevented from making such payment by any act of the Carmodys. In so holding we conclude that the trial court was correct and its action in this regard should be upheld.

■ The general rule as stated in 91 C.J.S., vendor and purchaser §10, pp. 856-857 is that "payment or tender is not essential to acceptance unless the option instrument makes it a condition precedent to, or a part of, or necessary to, the acceptance or exercise of the option . . ."; but that "where an option contract provides for payment of all or a portion of the purchase price in order to exercise the option, to entitle the optionee to a conveyance he must, as a rule, not only accept the offer, but pay or tender the agreed amount within the prescribed time . . ."

Miller initially suggests that the option agreement between him and the Carmodys did not require any payment by him of a portion of the purchase price and that all he had to do in order to exercise his option was to notify the Carmodys in writing of his acceptance of their outstanding offer on or before September 10, 1960. However, the unequivocal terms of the agreement executed by the parties on October 10, 1959, provide that Miller for a consideration was granted an option to purchase on or before October 10, 1960, certain acreage belonging to the Carmodys, his acceptance of the offer to be evidenced by (1) a written notice to the Car-

modys on or before September 10, 1960, of his intention to accept, and (2) a payment of 20% of the purchase price on or before October 10, 1960. Accordingly the agreement itself clearly renders this contention completely untenable.

The main thrust of Miller's argument is that though he made no payment of 20% of the total purchase price as called for by the option agreement, or any tender thereof, he was, according to his complaint filed months subsequent to October 10, 1960, then "ready, willing and able" to pay such sum as might be determined by the court to be due and owing the Carmodys. Additionally, he suggests that he is excused from performing the obligations imposed upon him by the option agreement because of misconduct on the part of the Carmodys, which allegedly prevented him from so performing. Neither of these contentions has merit.

In *Rude v. Levy,* 43 Colo. 482, 96 Pac. 560, an optionee who had not paid nor made tender of the sum called for by the option agreement brought a suit for specific performance on the option agreement, contending that the offer in his complaint to pay "all the balance due upon the contract" was sufficient to entitle him to the relief sought. This contention was rejected with the declaration that "a full and proper tender to the vendor of the purchase price or other consideration in accordance with the terms of the instrument, is an essential condition precedent to a suit for specific performance."

To similar effect, see *Bailey v. Lay,* 18 Colo. 405, 33 Pac. 407, where it was said:

"In a case of this kind, when the time for payment has actually arrived, mere readiness and willingness to pay are immaterial — such readiness and willingness, without more, will not discharge contract obligations. An averment of readiness and willingness to pay presents nothing tangible or substantial; it involves little more than the state of mind of the party presenting the

plea . . . Hence it is, that to state a cause of action in a case of this kind the law requires that the complaint shall contain a direct and positive averment of payment, or an offer to pay."

As a continuation of the foregoing line of argument, Miller in the third claim of his amended complaint and in his affidavit suggests, not by direct allegation but by inference only, that the Carmodys somehow prevented him from paying them the part payment called for by the option agreement by verbally intimating that Carmody Lake was not actually 26 acres in size, but only 10 acres. Assuming that such a conversation did in fact occur, we fail to see just how this prevented or legally excused Miller from complying with the provision of the option agreement that he make part payment of the purchase price.

The option agreement did not define the size of Carmody Lake, though it did provide that such acreage would sell at a lesser rate than the balance of the acreage. From Miller's affidavit we learn that his surveyor in March 1960 determined Carmody Lake to be 26 acres. Using this figure and applying the formula spelled out in the option agreement, the total purchase price for the property was $245,500, with 20% of that figure being $49,100. The mere fact that the Carmodys expressed the thought that Carmody Lake was something less than 26 acres in nowise prevented Miller from paying them the sum of $49,100, or making tender of this amount, which sum according to his computation was the amount of the payment called for by the agreement. It should be parenthetically noted that this purported dispute as to whether Carmody Lake is 26 acres in size, or only 10, places in controversy insofar as the 20% payment is concerned the relatively small amount of $1,600 — small at least in comparison with the total purchase price. Assuming the Carmodys are correct in their contention that Carmody Lake is only 10 acres in size, the total purchase price would then be $253,500

with 20% thereof being $50,700. Miller's contention that being uncertain as to whether $50,700 or $49,100 was to be paid by him to the Carmodys on or before October 10, 1960, he was therefore justified in paying them absolutely nothing is completely without merit and the mere statement of the proposition demonstrates it to be most specious.

In summary, in order for Miller to maintain a suit on this option agreement he must have himself first performed, or offered to perform, or shown sufficient excuse for not performing, all of the conditions required of him by the agreement. It is evident from the pleadings and his own affidavit that on or before October 10, 1960, he did not pay the Carmodys the partial payment called for by the option agreement, nor did he tender any such sum, nor according to the record before us did he have sufficient excuse for his omission in this regard. There being no genuine issue as to any material fact the trial court did not err in granting the Carmodys' motion for summary judgment, and the judgment of dismissal is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.