LAURENCE R. SMITH, JR. *v.* HEVRO REALTY CORPORATION ET AL.
(12496)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued February 13—decision released April 15, 1986

*David E. Wyskiel,* with whom, on the brief, was *Alan M. Solomon,* for the appellant (defendant Carpet & Furniture Clearance Center, Inc.).

*John C. Yavis, Jr.,* with whom was *David C. Smith,* for the appellee (plaintiff).

PETERS, C. J. The principal issue on this appeal is whether the defendant Carpet & Furniture Clearance Center, Inc. (hereinafter Carpet Center), effectively exercised its right of first refusal to purchase a piece of commercial property. The plaintiff, Laurence R. Smith, Jr., brought an action to quiet title to the property, which he had contracted to purchase from the defendant Hevro Realty Corporation (hereinafter Hevro), and to compel Hevro to convey the property to him under the terms of that contract. He joined as defendants both Hevro and Carpet Center, a rival claimant to the property under the terms of a right of first refusal it had received from Hevro. Carpet Center counterclaimed against the plaintiff alleging slander of title and tortious interference with legitimate business expectations, and cross claimed against Hevro alleging breach of its lease.[1] The trial court, *Susco, J.,* rendered judgment for the plaintiff, quieting title to the property in Hevro and ordering Hevro to convey

---

[1] Carpet Center also cross claimed against Hevro alleging tortious interference with legitimate business expectations. The judgment against Carpet Center on this claim has not been challenged on this appeal.

that property to the plaintiff under the terms of their purchase and sales contract.[2] The court also rendered judgment against Carpet Center on its counterclaims and cross claims. From this judgment Carpet Center appeals.[3]

The underlying facts are undisputed. On January 3, 1980, Hevro, the owner of a commercial building in Newtown, agreed to lease a portion of the building to Carpet Center for a term of two years, with renewal options extending the term by an additional eight years. The written lease agreement executed by the parties contained a clause granting Carpet Center "a right of first refusal" to purchase the property during the pendency of the lease.[4] Under the terms of this clause,[5] if Hevro decided to sell the property and found a bona fide purchaser ready to buy it, Hevro was obligated to give Carpet Center immediate notification of the terms of the proposed sale. Carpet Center then had the right,

---

[2] Following judgment, the trial court granted a stay of the order granting specific performance. The stay was eventually terminated on August 1, 1984, and specific performance was ordered to be carried out by November 30, 1984. Hevro has since conveyed the property to Smith.

[3] Carpet Center has not appealed the adverse judgment on its counterclaims against Smith, nor has Smith appealed the adverse judgment he received on his slander of title claim against Carpet Center. Hevro has not appealed any part of the judgment.

[4] The lease agreement between Carpet Center and Hevro also gave Carpet Center a separate right of first refusal to lease additional space in the building.

[5] The right of first refusal contained in the lease agreement provided the following:

"It is further agreed by the LESSOR, and the LESSOR does hereby grant a right of first refusal for the purchase of said premises upon which the leased premises herein are located. In the event that during the term of this Lease the LESSOR shall desire to sell said premises and shall find a bonafide purchaser, then the LESSOR shall immediately give notice of the terms of the proposed purchaser, Certified Mail, Return Receipt Requested, to the LESSOR [sic]. Should there be no reply to the offer within thirty (30) days of the date of the mailing of said Certified Mail, then the LESSEE shall be deemed to have rejected the terms of said offer and thereby waive [sic] the right of first refusal."

valid for thirty days, to purchase the property on the same terms as those negotiated with the third party purchaser.

In June, 1983, Hevro entered into a conditional contract, subject to Carpet Center's right of first refusal, to sell the property to the plaintiff Smith for a total purchase price of $400,000.[6] Pursuant to the terms of this contract, Smith paid a $40,000 deposit to Hevro at the time he signed the contract, and agreed to pay the balance of the purchase price at the closing.[7] On June 24, 1983, Hevro's attorney sent a notice to Carpet Center, informing it of the proposed purchase by Smith, enclosing a copy of the conditional sales contract containing the terms and conditions agreed to by Hevro and Smith, and giving Carpet Center thirty days in which to exercise its right of first refusal and purchase the property "on the same terms and conditions." The notice specified that, to be effective, Carpet Center's exercise of its "option" had to be in writing, unconditional, and "postmarked no later than 12:00 midnight July 24, 1983." In response to this notice, Carpet Center's attorney sent a letter to Hevro, indicating that Carpet Center was "exercis[ing] his [sic] Option to Purchase upon the same terms and conditions as set forth in the [Hevro-Smith] Contract of Sale." This letter went on to request Hevro to send Carpet Center

---

[6] At the time Smith entered into the conditional contract to purchase the property which is the subject of the present action, he also entered into a separate agreement to lease the empty space in the building. This lease agreement was made subject to Carpet Center's right of first refusal to lease this portion of the building. On June 24, 1983, Hevro sent Carpet Center notice of the lease agreement between Smith and Hevro, but Carpet Center never responded to this notice. This agreement was not challenged in the underlying action.

[7] On June 20, 1983, Hevro and Smith executed a separate agreement, clarifying the parties' rights and responsibilities relative to Carpet Center's rights of first refusal. This agreement gave Smith the option of declaring the contract of purchase and/or the lease agreement null and void in the event that Carpet Center exercised either of its rights of first refusal.

its "proposed Contract of Sale." No deposit accompanied this letter. Although postmarked July 22, 1983, the letter was not received by Hevro until August 6 or 7, 1983.

On August 9, 1983, Hevro's attorney wrote to both Smith and Carpet Center. In his letter to Smith, the attorney informed him that Carpet Center had "exercis[ed] the Right of First Refusal," enclosed a copy of Carpet Center's letter of exercise, and returned Smith's deposit. Smith subsequently notified Hevro that he considered Carpet Center's exercise invalid. Smith therefore returned the check to Hevro and demanded that Hevro perform under its contract with him.

In his contemporaneous letter to Carpet Center, Hevro's attorney stated that he considered Carpet Center's exercise of its "option" to have been incomplete because it had not been signed by a "properly authorized Corporate Officer,"[8] and because it had not included a $40,000 deposit. Hevro's attorney gave Carpet Center until August 17, 1983, to correct these deficiencies "or the exercise of the option [would] be considered defective and void the rights of [Carpet Center] to purchase."

On August 16, 1983, counsel for Carpet Center called Hevro's attorney, again requesting a new contract, and indicating that Carpet Center would not make the $40,000 deposit until it had received such a contract. Hevro's attorney refused this request, claiming that a new contract was unnecessary. He then informed Carpet Center that he was adopting a "hands off policy" concerning the relative rights of Smith and Carpet Center to purchase the property.

---

[8] Neither Smith nor Hevro has pursued on appeal the claim that Carpet Center's exercise was also ineffective because it lacked the signature of a corporate officer.

Subsequently, Carpet Center recorded a caveat in the Newtown land records, indicating that it had "exercised its Right of First Refusal for the purchase" of the property in question. Several days later, the plaintiff recorded his contract with Hevro in the same land records. On September 28, 1983, the plaintiff brought the present action.

On appeal from the judgment against it, Carpet Center raises three claims of error. It claims that the trial court erred: (1) in finding that Carpet Center's exercise of its right of first refusal was ineffective; (2) in finding that Hevro did not break its lease with Carpet Center when it executed a conditional sales contract with Smith; and (3) in ordering Hevro to convey the property to Smith under the terms of their sales contract.[9] We find no error.

I

Our evaluation of Carpet Center's initial claim of error requires us to undertake a two-step analysis. We must first determine the nature of the right which Carpet Center possessed. We must then decide whether that right was effectively exercised.

By the terms of the relevant lease provision, Hevro granted Carpet Center a right of first refusal to purchase the property on the same terms as those proposed by a third party purchaser. This right was conditioned on the occurrence of two events: Hevro's desire to sell the property, and its receipt of an acceptable offer from a bona fide purchaser. Unlike an option, this right of first refusal did not, prior to the fulfillment of these conditions, constitute an offer to sell by Hevro or create in Carpet Center the power to compel a sale by acceptance. *New Haven Trap Rock Co.* v. *Tata,* 149

[9] Carpet Center also claims error in the trial court's failure to award damages. In view of our disposition of this case, we need not consider this issue.

Conn. 181, 186, 177 A.2d 798 (1962); 1A Corbin, Contracts (1963) § 261, p. 468. It merely required Hevro, "before it [sold] the [property] to some third party, to offer it to [Carpet Center] on the same terms it [was] willing to accept from the third party." *Ross* v. *Shawmut Development Corporation*, 460 Pa. 328, 335, 333 A.2d 751 (1975); see 2 Friedman, Leases (2d Ed. 1983) § 15.6, p. 804; 1A Corbin, supra, § 261, pp. 473–74.

Once Hevro notified Carpet Center of the receipt of Smith's offer, however, Carpet Center's right of first refusal ripened into an option. *Texaco, Inc.* v. *Rogow*, 150 Conn. 401, 404–405 n.2, 190 A.2d 48 (1963); *Saraceno* v. *Carrano*, 92 Conn. 563, 565, 103 A. 631 (1918); *Imperial Refineries Corporation* v. *Morrissey*, 254 Iowa 934, 940, 119 N.W.2d 872 (1963); *Ross* v. *Shawmut Development Corporation*, supra, 336; *Crowley* v. *Texaco, Inc.*, 306 N.W.2d 871, 873 (S.D. 1981); *Bricker* v. *Walker*, 139 Vt. 361, 364, 428 A.2d 1129 (1981). An option is a continuing offer to sell, irrevocable until the expiration of the time period fixed by agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer. 1A Corbin, supra, § 259, pp. 459–61; 1 Williston, Contracts (3d Ed. 1957) § 61A, pp. 198–99; annot., 71 A.L.R.3d 1201, 1205 (1976). Hevro's letter of notice to Carpet Center, when combined with the lease provision on which it rested and the contract with Smith to which it referred, constituted an offer, irrevocable for thirty days, to sell the property to Carpet Center on the same terms and conditions as those agreed to by Smith. The trial court was therefore correct in concluding that Carpet Center's right to purchase matured into an option once Carpet Center received notice of the Smith offer from Hevro.

Having decided that Carpet Center possessed an option to purchase the Hevro property, we must next

determine whether its exercise of that option was effective. The trial court concluded that the exercise was ineffective for two reasons: because Carpet Center's notice of acceptance was untimely, and because this acceptance failed to comport with the terms of the offer. We shall examine each of these grounds separately.

## A

The trial court found that Carpet Center's exercise of its option was not timely because it was not received by Hevro until after the expiration of the thirty day option period. In the provision of the lease that granted Carpet Center its right to purchase, the parties agreed that, to be effective, a reply to notice of an offer had to be made "within thirty (30) days of the date of the mailing of [the notice]." When Hevro notified Carpet Center of the Smith offer on June 24, 1983, however, Hevro informed Carpet Center that "[t]he Lessee's option is exercisable pursuant to the terms of the existing lease in writing mailed . . . and *postmarked no later than 12:00 midnight July 24, 1983.*" (Emphasis added.) Carpet Center's letter of acceptance was in fact postmarked July 22, 1983, two days *before* the thirty day deadline, even though it was not received by Hevro until August 6 or 7, 1983.

In considering whether an offeree has exercised a right of acceptance in timely fashion, courts have fashioned rules that differ from those that govern acceptance of a revocable offer. Unless the parties have agreed to the contrary, acceptance under an option contract is not effective until it is actually received by the offeror. *Cities Service Oil Co.* v. *National Shawmut Bank,* 342 Mass. 108, 110 n.1, 172 N.E.2d 104 (1961); *Salminen* v. *Frankson,* 309 Minn. 438, 440, 440 n.2, 245 N.W.2d 839 (1976); 1 Restatement (Second), Contracts § 63 (b) (1979); 1A Corbin, supra, § 264, p. 521.

In this case, the terms of the underlying lease were consistent with the general rule requiring acceptance of an option to be received, but, as Carpet Center argues, the terms of the letter of notification indicated an intent by Hevro, as offeror, to consider Carpet Center's acceptance effective upon mailing.[10] Hevro's letter would appear to evidence a special agreement making Carpet Center's acceptance timely.

The trial court's finding that the acceptance was not timely recognized that Hevro's letter of June 24, 1983, might have "waived the time limitation contained in its lease." The trial court concluded, however, that Hevro's waiver was not binding on the independent rights of the plaintiff Smith to have Carpet Center exercise its option within the time limits specified in the lease. The court did not undertake any further exploration of the relationship between Hevro's conduct and the plaintiff's rights. We will not resolve this issue and will assume, arguendo, that Carpet Center's exercise of its offer was not untimely.

### B

The trial court also found that Carpet Center failed to exercise its option in accordance with the terms of the agreement when it failed to tender a deposit of $40,000 either at the time of its formal acceptance of the option or within a reasonable time thereafter. The governing provisions of the lease created a right of first refusal for Carpet Center on the same terms and conditions as those proposed by a bona fide purchaser. One of the terms of the Hevro-Smith contract called for the payment of a $40,000 deposit by Smith "upon the sign-

---

[10] Hevro has never contested the timeliness of Carpet Center's reply. In its letter to Carpet Center of August 9, 1983, Hevro stated: "We accept the fact that the option time limitations were met." In his testimony at trial, Hevro's attorney acknowledged that Hevro considered Carpet Center's exercise of its option to have been timely.

ing of this Contract," with the balance due "on delivery of the deed." The crucial question of interpretation is whether, as the trial court found, these agreements required Carpet Center to tender a deposit at the time of its exercise of its option or whether, as Carpet Center maintains, this deposit was only due at the time that a contract of sale was tendered by Hevro to Carpet Center.

The principles that govern the interpretation of an option contract are well settled. To be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, "and in exact accord with the terms of the option." 1A Corbin, supra, § 264, p. 523; *Department of Public Works & Buildings* v. *Halls,* 35 Ill. 2d 283, 285, 220 N.E.2d 167 (1966); *Katz* v. *Pratt Street Realty Co.,* 257 Md. 103, 118, 262 A.2d 540 (1970); *Bricker* v. *Walker,* supra, 364; annot., 71 A.L.R.3d, supra, 1205. Where there is ambiguity in the language of the agreement, option contracts are generally strictly construed *against* the optionee. *Pigeon* v. *Hatheway,* 156 Conn. 175, 183, 239 A.2d 523 (1968). "If an option contract provides for payment of all or a portion of the purchase price in order to exercise the option, the optionee, to be entitled to a conveyance, must not only accept the offer but pay or tender the agreed amount within the prescribed time." *Coombs* v. *Ouzounian,* 24 Utah 2d 39, 41, 465 P.2d 356 (1970); *Miller* v. *Carmody,* 152 Colo. 353, 358, 384 P.2d 77 (1963); see annot., 71 A.L.R.3d, supra, 1205. In such cases, a mere acceptance of the offer, even though unequivocal, is insufficient to exercise the option. *Miller* v. *Carmody,* supra, 358–60. The determination of the terms and conditions of Carpet Center's option contract must be resolved, in the absence of supplementary evidence of the intent of the parties, by reference to the terms of the contract itself. *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645 (1970); *Texas Co.* v.

*Crown Petroleum Corporation,* 137 Conn. 217, 226, 75 A.2d 499 (1950). Because such a determination is a question of fact, the trial court's findings in this regard must stand unless they are clearly erroneous. *Gallicchio Bros., Inc.* v. *C & S Oil Co.,* 191 Conn. 104, 107, 463 A.2d 600 (1983); *Rahmati* v. *Mehri,* 188 Conn. 583, 587, 452 A.2d 638 (1982).

On their face, the relevant documents and evidence in this case support the trial court's findings that Carpet Center was obligated to match the deposit provisions of the Smith-Hevro contract, and that Carpet Center's failure to do so rendered invalid its attempted exercise of its option. Carpet Center relies, however, on the clause in the Smith-Hevro contract which required the Smith deposit to be paid "upon the signing of this Contract." Since that clause made the tender of a contract of sale a precondition to Smith's obligation to pay a deposit, Carpet Center maintains that it too was entitled to postpone its payment of a deposit until it received a contract of sale from Hevro.[11] We are unpersuaded.

Carpet Center's argument misperceives the legal significance of the written document in the Smith-Hevro relationship on the one hand and the Carpet Center-Hevro relationship on the other hand. A written contract between Smith and Hevro was necessary both to spell out the terms of their mutual undertakings and to satisfy the statute of frauds. *Heyman* v. *CBS, Inc.,* 178 Conn. 215, 220, 423 A.2d 887 (1979); *Botticello* v. *Stefanovicz,* 177 Conn. 22, 31, 411 A.2d 16 (1979). Smith's signature on this contract created a legally effective offer to purchase the Hevro property on the terms contained in the document which, when signed

---

[11] Carpet Center also argues that tender of deposit was not necessary to provide consideration for the contract of sale. The issue of consideration is, of course, distinct from the issue of whether tender of the deposit was a condition precedent to the formation of a valid contract.

by Hevro, resulted in a binding agreement between the parties. Hevro's written notice to Carpet Center of this proposed sale, on the other hand, when combined with the underlying lease provision, constituted a binding offer by Hevro to sell the property to Carpet Center on the terms and conditions contained in the attached Smith-Hevro contract. *Imperial Refineries Corporation* v. *Morrissey,* supra, 940. The writings together were sufficient to spell out the terms of the offer and to satisfy the statute of frauds. *Heyman* v. *CBS, Inc.,* supra, 220–21. Carpet Center's unconditional written acceptance of this offer was legally sufficient to create a binding contract. 3 Thompson, Real Property (1959) § 1155, pp. 588–89. This combination of writings was for Carpet Center the legal equivalent of the single document signed by Smith. Since Smith was required to tender deposit upon the signing of *his* contract, Carpet Center was obligated to make an equivalent deposit upon the signing of *its* contract, that is, upon the signing of the letter exercising its option. Although Carpet Center might have preferred to memorialize its purchase of the Hevro property in a new writing, such a writing would have had no effect on its fully matured rights under the option contract derived from its lease. For that reason, Carpet Center was not entitled to a new contract as a matter of law.[12] The trial court was therefore correct in finding that the terms of Carpet Center's option contract did not permit Carpet Center to insist on a new writing as a precondition to its tender of the deposit.

Carpet Center further argues, however, that even if a new contract was not a precondition to its duty to tender the deposit, that duty was excused altogether

---

[12] We note that the original lease agreement between Hevro and Carpet Center was drafted on the stationery of Carpet Center's attorney. If Carpet Center wished to have a new writing, it could easily have drafted one and proffered it to Hevro.

by Hevro's subsequent conduct. In support of this argument, Carpet Center points to two specific actions of Hevro: first, Hevro's letter of August 9, 1983, in which Hevro extended to August 17 the deadline for Carpet Center's compliance; and second, the statement of Hevro's attorney on August 16 that Hevro was adopting a "hands off policy" concerning the relative rights of Carpet Center and Smith to purchase the property. The trial court found that Hevro's August 9 letter was effective to extend until August 17 the time for Carpet Center's performance,[13] but that Carpet Center's failure to tender the deposit by that deadline was unreasonable.

We conclude that Carpet Center's obligation to tender the deposit was not excused by Hevro's conduct. Tender may be excused where it "would be a mere futility"; *Vachon* v. *Tomascak,* 155 Conn. 52, 57, 230 A.2d 5 (1967); as, for example, where the vendor has already repudiated the contract of sale. *H. M. R., Inc.* v. *Boeckenhauer,* 24 Ill. 2d 65, 70, 179 N.E.2d 613 (1962). Carpet Center claims that Hevro's adoption of a "hands off policy" effectively amounted to a repudiation of the contract. We disagree. Hevro's willingness to extend the time for Carpet Center's performance is far more consistent with readiness to perform than with repudiation. Hevro's "hands off policy" may have indicated a reluctance to become embroiled in the legal battle brewing between Smith and Carpet Center, but it did not indicate a repudiation of either its option contract with Carpet Center or its conditional sales contract with Smith. On the contrary, Hevro repeatedly stated that it was willing to convey either to Carpet Center or to Smith, whichever one demonstrated superior legal

---

[13] The trial court did not address the question of whether Smith's rights under his contract with Hevro prevented Hevro from validly extending Carpet Center's time for performance. In view of our disposition of this case, we need not decide this question.

rights to the property. It was Carpet Center's own failure to satisfy the terms of its option contract which prevented that contract from being completed. The trial court would have been justified in finding that Carpet Center was obligated to tender its deposit simultaneously with its July 22 letter of acceptance. Instead, the court recognized Hevro's letter of August 9 as effective to extend the deadline to August 17, thus granting Carpet Center an additional period in which to perform. Carpet Center's failure to meet even that extended deadline clearly extinguished its rights under its option contract. The trial court therefore did not err in finding that Carpet Center did not effectively exercise its option, and that this failure foreclosed its right to purchase the property.

## II

Carpet Center next claims that the trial court erred in finding that Hevro had not broken its lease agreement with Carpet Center when it entered into a conditional sales contract with Smith. Specifically, Carpet Center argues that Hevro was obligated to notify Carpet Center as soon as it had received an acceptable offer from Smith, *before* it had executed a contract with him. Even though the Hevro-Smith contract was expressly made subject to Carpet Center's right of first refusal, Carpet Center characterizes Hevro's execution of that contract as a violation of the terms of the lease. We find no merit to this contention.

The language of the lease agreement itself refutes Carpet Center's claim. The relevant provision states that "[i]n the event that during the term of this Lease the LESSOR shall desire to sell said premises and shall find a bonafide *purchaser,* then the LESSOR shall immediately give notice of the terms of the proposed purchaser . . . to the [LESSEE]." (Emphasis added.)

The lease refers to a bona fide purchaser, not to an offeror. Nothing in this language prohibited the lessor, Hevro, from entering into a conditional agreement with Smith, so long as that agreement honored Carpet Center's right of first refusal. Since the Hevro-Smith contract and accompanying agreement clearly made Smith's right to purchase the property conditional on Carpet Center's failure to exercise its option, Hevro's execution of the contract did not violate the express terms of the lease.

Carpet Center argues, however, that such a requirement may be implied from the nature of the right of first refusal itself. It cites as sole authority for this proposition a portion of a passage in Corbin on Contracts, supra, which seems to characterize just such a conditional sales contract as a violation of a right of first refusal. On close examination, however, it becomes apparent that the evil from which Corbin sought to shelter the holder of a right of first refusal was the passage of *title* subject to the holder's right, and not the negotiation of an executory contract of sale expressly conditioned upon a right of first refusal. 1A Corbin, supra, § 261, p. 474.

We can discern no reason of policy to interpolate into the lease between Hevro and Carpet Center conditions and prerequisites that the agreement on its face does not contain. Carpet Center's right of first refusal was not compromised in any way by the conditional agreement entered into by Hevro and Smith. On the contrary, Hevro adhered strictly to the terms of the lease by sending notice of the offer to Carpet Center, and it stood ready at all times to honor Carpet Center's right to purchase. Consequently, the trial court did not err in finding that Hevro did not break its lease agreement with Carpet Center.

## III

Carpet Center's final claim is that the trial court erred in ordering specific performance of the Hevro-Smith contract. The crux of this claim is that Carpet Center, not Smith, had a stronger legal interest in the property, and that the equities favor honoring that interest. In light of our disposition of the first two issues in this case, this claim has no merit.

A trial court enjoys broad discretion in its decision to order specific performance of a contract to sell land. *Frumento* v. *Mezzanotte,* 192 Conn. 606, 615, 473 A.2d 1193 (1984). That decision will not be upset unless it is clearly erroneous. Id., 617. In the present case, the trial court found that Carpet Center's legal right to purchase the Hevro property was extinguished when it failed to exercise its option to purchase; that Smith, upon the expiration of Carpet Center's option, had a valid contract to purchase the property; that the property "uniquely suited" his purposes; and that he was "ready, willing and able to close pursuant to the contract." We have already decided that the trial court was correct in the first two of these findings, and Carpet Center has not contested the other two. Under these circumstances, the trial court was acting well within its discretion in ordering Hevro to perform specifically according to the terms of its contract with Smith.

There is no error.

In this opinion the other judges concurred.