HOMER G. SCOVILLE *v.* SHOP-RITE
SUPERMARKETS, INC., ET AL.
(AC 24063)

Flynn, West and Mihalakos, Js.

Argued September 8—officially released December 14, 2004

*Andrew J. O'Keefe*, with whom were *Joseph M. Busher, Jr.*, and *Eugene C. Cushman*, for the appellant (plaintiff).

*Charles D. Ray*, with whom, on the brief, were *Eric W. Wiechmann* and *Salvatore N. Fornaciari*, for the appellee (named defendant).

*Barbara A. Frederick*, with whom, on the brief, was *Robert M. DeCrescenzo*, for the appellee (defendant Washington Middle Three, LLC).

*Craig A. Raabe*, with whom was *Lisa K. Titus*, for the appellee (defendant F.P.T. Associates Leasing, Inc.).

*Opinion*

MIHALAKOS, J. The plaintiff, Homer G. Scoville, appeals from the judgment of the trial court granting the motions filed by the defendants Shop-Rite Supermarkets, Inc. (Shop-Rite), Washington Middle Three, LLC (Washington), and F.P.T. Associates Leasing, LLC, (F.P.T.), to dismiss his summary process action. The court found that Shop-Rite had provided timely notice of its decision to exercise its option to renew its lease of the commercial property at issue. On appeal, the plaintiff claims that the court improperly concluded that actual notice of intent to exercise the lease option was not required. In addition, the plaintiff contends that the attempted delivery of a certified letter was insufficient to provide notice under the terms of the lease. We affirm the judgment of the trial court.

I

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In 1967, Mott's Shop-Rite of Middletown, Inc. (Mott's), entered into a lease with the owners of a shopping center,

known as Washington Plaza, in Middletown. At some time during the 1980s, the plaintiff purchased the property from the original owners, subject to the lease held by Mott's. In 1987, subsequent to the plaintiff's purchase of the land, the lease was assigned by Mott's to Shop-Rite. The lease had an original term of twenty years, but provided, in paragraph five, four options to extend the lease for periods of five years each.[1]

Shop-Rite properly exercised its option to extend the lease in 1988 and 1993. The extension exercised in 1993 was scheduled to end on July 31, 1998. According to the terms of the lease, Shop-Rite was therefore required to give notice to the plaintiff of its intention to exercise the option to extend the lease for an additional five years on or before January 31, 1998, six months before the lease expired. Paragraph thirty of the lease provided the means by which all notices were to be sent to the landlord, including the use of certified mail.[2]

After negotiating a sublease with Washington and F.P.T., Shop-Rite sent a certified letter to the plaintiff, which was dated January 27, 1998, and postmarked January 29, 1998, setting forth its intent to exercise its

[1] The relevant portion of paragraph five of the lease provides: "(a) The Tenant may, by giving notice to the Landlord six (6) months or more before the last day of the term of this Lease, extend such term to and including the 31st day of July, 1993, upon the same covenants and agreements as are herein set forth.

"(b) If the Tenant has exercised the foregoing privilege to extend the term and is otherwise rightfully in possession of the premises it may, by giving notice to the Landlord six (6) months or more before the last day of the extended term, further extend said term to and including the 31st day of July, 1998 upon the same covenants and agreements as are herein set forth."

[2] The relevant portion of paragraph thirty of the lease provides: "All notices due the Landlord shall be sent by telegram or registered or certified mail addressed to the person to whom rent is payable at the address to which payments of rent may be sent, except that if the Tenant shall be in doubt as to whom payments should be made they may be addressed and sent to the person to whom rent was last paid at the address where such payment was directed."

option. The certified letter was sent to the plaintiff's home in Naples, Florida, the location where Shop-Rite had been directed to send its rent checks.[3] On January 31, 1998, the United States Postal Service attempted delivery of the certified letter to the plaintiff's home. The plaintiff was not at home. The postal service, therefore, left a notice for him, stating that it had attempted to deliver a certified letter, which he could pick up at the post office. The plaintiff alleges that by the time he received the notice, the post office was closed and that he could not retrieve the letter until Monday, February 2, 1998.

The plaintiff informed Shop-Rite by telephone, on February 3, 1998, and by letter, dated February 5, 1998, that the notice of Shop-Rite's intention to exercise the option had not been timely. The plaintiff then sought a declaratory judgment on the status of the lease. The court, *Cohn, J.*, issued an interlocutory order, ruling that actual notice, meaning actual in-hand receipt of the notice, was required and that Shop-Rite had not provided timely notice of its exercise of the option to renew the lease. After Judge Cohn's ruling, the parties attempted to reach a settlement. When negotiations between the parties deteriorated, the plaintiff filed a summary process action. The court, *O'Keefe, J.*, granted the defendants' motions to dismiss the summary process action, finding that according to the terms of the lease, certified mail was appropriate and that actual notice was not required. Thus, according to the court, Shop-Rite had provided timely notice of its intent to exercise the renewal option. This appeal followed.

## II

Before addressing the merits of the plaintiff's argument, we set forth our standard of review on a challenge

---

[3] The record also shows that Shop-Rite had sent a copy of the letter by certified mail to the plaintiff's home in Niantic and to his post office box in Glastonbury. In addition, the defendants also sent a copy of the same

to a ruling on a motion to dismiss. When the facts relevant to an issue are not in dispute, this court's "task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions of law are legally and logically correct." *Harp* v. *King*, 266 Conn. 747, 772, 835 A.2d 953 (2003). Because there is no dispute regarding the basic material facts, this case presents an issue of law and our review is plenary. See *Malchik* v. *Division of Criminal Justice*, 266 Conn. 728, 734, 835 A.2d 940 (2003).

The issue in this case is whether the attempted delivery of a certified letter constitutes sufficient and timely notice of acceptance of an option to renew a lease. The plaintiff's argument is twofold. The plaintiff first maintains that the terms of the lease require actual notice[4] to exercise the option to renew the lease and that the attempted delivery via certified mail does not comply with the terms of the lease. Alternatively, the plaintiff suggests that paragraph five, the portion of the lease containing the option provisions, does not specify any notice requirement. In the absence of an agreement between the parties, acceptance of an option contract is effective only when the optionor receives actual notice of that acceptance. The defendants respond that actual notice was not contemplated according to the terms of the lease and that the use of certified mail was an acceptable form of notice to the landlord, which implicitly does not require that the landlord actually receive the letter on a particular date.

The plaintiff asserts that due to the nature of an option contract, actual notice of acceptance is generally required. "An option is a continuing offer to sell, irrevocable until the expiration of the time period fixed by

letter by United Parcel Service overnight mail to the plaintiff's addresses in Naples, Niantic and Glastonbury.

[4] In his brief, it appears that the plaintiff equates the term "actual notice" with "in-hand" receipt.

agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer." *Smith* v. *Hevro Realty Corp.*, 199 Conn. 330, 336, 507 A.2d 980 (1986). "The principles that govern the interpretation of an option contract are well settled. To be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, and in exact accord with the terms of the option." (Internal quotation marks omitted.) Id., 339. In dicta, our Supreme Court in *Smith* stated that "[u]nless the parties have agreed to the contrary, acceptance under an option contract is not effective until it is received by the offeror." Id., 337; 1 Restatement (Second), Contracts § 63 (b) (1981).[5] Hence, when accepting an option contract, actual in-hand notice or receipt of notice is generally required.

Nevertheless, parties to an option contract may make an agreement that does not require actual notice for effective acceptance. "It is [well] established . . . that parties are free to contract for whatever terms on which they may agree. This freedom includes the right to contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract." (Internal quotation marks omitted.) *Gibson* v. *Capano*, 241 Conn. 725, 730, 699 A.2d 68 (1997). "[A] contract is to be construed to give a reasonable effect to each of its provisions if possible. . . . The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." (Citation omitted; internal quotation marks omitted.) *Zenon* v. *R. E. Yeagher Management Corp.*, 57 Conn. App. 316,

---

[5] According to § 63 of the Restatement, "Unless the offer provides otherwise . . . (b) an acceptance under an option contract is not operative until received by the offeror." Here, the lease provisions create an agreement between the parties designating certified mail as the method of notice for accepting the option. The parties, therefore, have contracted out of the general rule set out by the Restatement.

325, 748 A.2d 900 (2000).[6] Because a lease is a contract, it should be subject to the same rules of construction as any other contract. See *Ingalls* v. *Roger Smith Hotels Corp.*, 143 Conn. 1, 6, 118 A.2d 463 (1955).

An examination of Shop-Rite's lease as a whole suggests that the parties, exercising their right to contract, reached an agreement that allowed for notice to be sent to the landlord by certified mail. Consequently, the parties have agreed that actual in-hand notice of acceptance of the option is not required.[7] We are not persuaded by the plaintiff's argument that the use of the phrase "giving notice" in paragraph five distinguishes the option provision from the methods of notice delineated in paragraph thirty of the lease. There is nothing in the language of either provision that suggests that they should be read separately. Instead, we conclude that the parties specifically contracted for the use of certified mail as a form of notice. A logical inference is that the parties specified the use of certified mail, as opposed to regular postal service, because of the special protections provided by that method of delivery. Certified mail provides a record of service and requires a signature on delivery. There is, however, nothing to suggest that when the parties designated certified mail as an acceptable method of service, they intended the option holder to bear the risk of late delivery or that the landlord would not be home at the moment that the mail was delivered.

Connecticut courts have examined the risks and benefits associated with designating certified mail as a method of notice. In *Bittle* v. *Commissioner of Social*

---

[6] See *Xanthakey* v. *Hayes*, 107 Conn. 459, 470, 140 A. 808 (1928) (discussing whether lessee had performed conditions of option to renew lease, court stated that "[a]ll of the clauses of the instrument are to be construed together as a whole, so as to give effect to all of its parts" [internal quotation marks omitted]).

[7] See footnote 5.

*Services,* 249 Conn. 503, 515–16, 734 A.2d 551 (1999), our Supreme Court concluded that when the state provided persons with "the option of using the United States mail, the legislature did not intend to make the party using the United States Post Office responsible for mis-deliveries, nondeliveries or tardy deliveries that may occur, however rare they may be. . . . [N]either an agency nor the public can wield control over the deliv-ery schedules of the post office. The most either can do, when choosing the mail option for delivering docu-ments, is to place those documents in the hands of the post office." Id.; *Masko* v. *Wallingford,* 67 Conn. App. 276, 281–82, 786 A.2d 1209 (2001). It is accepted gener-ally that when the parties designate postal delivery as a method of service or notice, the process is complete when the item is sent, not when it is delivered to the recipient.

Any rule that provides that the risk of delivery of certified mail should be placed solely on the sender would set a dangerous precedent. There are many vari-ables associated with any type of mail delivery that are out of the control of either party, such as misdelivery or late delivery. In addition, by placing the risk solely on the optionee, the optionor could intentionally avoid accepting delivery until after the terminal date had passed.[8]

Even though we acknowledge that generally, actual in-hand notice is required to make effective acceptance of an option contract, parties are free to contract for a different form of notice. In this case, the lease pro-vided that notice could be given via certified mail. The inclusion of a designated method of notice suggests that the facts of this case are similar to those of *Smith*

[8] We will not speculate as to whether there was any avoidance of the letter in this case. We merely point out that a rule that places the risk on the sender may allow for uncertainty and manipulation of the contracting process.

v. *Hevro Realty Corp.*, supra, 199 Conn. 330. In that case, the parties reached a separate agreement, which determined how notice was to be given. Id., 337. Thus, our Supreme Court determined that notice of acceptance was effective before it was actually received. Similarly, the United States District Court for the District of Connecticut has held that when a lease designates the method of providing notice of acceptance of an option, the language of the lease should control. *Getty Refining & Marketing Co.* v. *Zwiebel*, 604 F. Sup. 774, 777 (D. Conn. 1985). Actual notice was not required. See id.

Furthermore, in *Westmoreland* v. *General Accident Fire & Life Assurance Corp.*, 144 Conn. 265, 270, 129 A.2d 623 (1957), which involved notice of cancellation of an insurance policy, our Supreme Court recognized that parties are free to contract as to how notice is to be given. The insurance policy in *Westmoreland* provided that the policy could be cancelled by providing notice to the insured by mail and that the mailing of the cancellation letter was sufficient proof of notice. Id. The court stated that "[i]t is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy. When they do so contract, the giving of a notice by the method contracted for is sufficient whether it results in actual notice or not." Id.

We conclude, therefore, that when parties have made an agreement, either separately or as part of the lease, designating the method of notice required for acceptance of an option contract, the parties must adhere to that agreement. Nowhere in the lease is there a requirement of actual notice. If more than mailing was required, the parties could have contracted to provide that the optionee must produce a signed return receipt to estab-

lish sufficient proof of notice.[9] Instead, the lease clearly designates certified mail as the method of notice for effective acceptance of the option contract. The defendants did what was required of them according to the terms of the lease, and we hold that notice of acceptance was timely.[10] Although we do not agree with the trial court that had actual notice been required, the attempted delivery of certified mail constitutes actual notice, we affirm the court's ruling on the defendants' motions to dismiss.

The judgment is affirmed.

In this opinion WEST, J., concurred.

FLYNN, J., dissenting. I respectfully dissent from the majority opinion holding that the defendant lessee Shop-Rite's exercise of its lease option to renew for an additional term was effective upon the attempted delivery of notice to the lessor, Scoville, even though actual notice was not received within the time provided by the lease for its exercise.

---

[9] See *Stratton* v. *Abington Mutual Fire Ins. Co.*, 9 Conn. App. 557, 562–63, 520 A.2d 617, cert. denied, 203 Conn. 807, 525 A.2d 522 (1987).

[10] We find under the facts of this case that the lessee, Shop-Rite, complied with the contractual provisions for accepting the plaintiff's offer to renew the lease. As long as Shop-Rite had the post office attempt delivery of the certified letter to the plaintiff at the address designated by the plaintiff in the lease on or before the last permissible day for the plaintiff's receipt of the certified letter, Shop-Rite had no further duty to make sure that the plaintiff was at the designated address to receive the certified letter in-hand. That would place too great of a burden on Shop-Rite to make sure that the plaintiff was at home when delivery was going to be attempted on January 31, 1998.

It is unreasonable for a party to stipulate that certified mail is an acceptable means of sending notice and then to claim that notice was not timely given because he was not at the designated address to receive it on the due date, whether his absence was intentional or unintentional. The plaintiff's absence from the designated address, whether intentional or unintentional, is overridden by the importance attendant to the certified letter that the postal carrier attempted to deliver, pursuant to the terms of the lease agreement, at the designated address on January 31, 1998. See footnote 9.

At issue before us in this case is the character of the act by which the lease required Shop-Rite to exercise the option to renew. Was the acceptance of the offer to renew contained in the lease effective upon attempted delivery or only upon actual receipt by Scoville? That is the issue.

The court, *O'Keefe, J.*, rendered a judgment of dismissal on behalf of Shop-Rite in Scoville's summary process action, and found that "[t]he 'last day of the extended term' was July 31, 1998, the last day for exercise of the extension [of the lease] was January 31, 1998." The court also found that Shop-Rite mailed notice of the exercise of its option to the plaintiff by certified letter on January 29, 1998.

The court also found that "[t]he certified letter to Naples [Florida] arrived on Saturday, January 31, 1998. As the plaintiff was not at home, the mail carrier left him a notice which would allow him to obtain the letter [at the post office]. When the plaintiff found the notice in the mid-afternoon of the 31st, the post office was closed. He retrieved the letter on Monday, February 2, 1998."

Despite Judge Cohn's prior interlocutory order[1] holding, in part, that Scoville had to be in receipt of the actual notice in which Shop-Rite exercised its option to renew before the exercise could become effective, the court, *O'Keefe, J.*, held to the contrary that under the lease agreement, receipt of actual notice after exercise of the option was not required. It concluded that by Shop-Rite's timely sending its renewal by certified mail, it did everything required by the lease to exercise the option.

---

[1] See *Scoville* v. *Shop-Rite Supermarkets, Inc.*, Superior Court, judicial district of New Britain, Housing Session, Docket No. 9806-1688 (May 30, 2001) (31 Conn. L. Rptr. 55), holding that Shop-Rite's notice was untimely, but declining to rule at that juncture whether there were equitable reasons for enforcing the option. This declaratory judgment action was later withdrawn.

The court also found that the plaintiff notified Shop-Rite in writing that the extension was rejected because the notice had arrived late.

The court further found that "possession of a certified mail slip or any other type of token by the offeror which entitles that individual to exclusive possession of the notice and confers a right of possession of the notice superior to that of all other parties is the equivalent of actual receipt of the notice." I disagree.

I first observe that had there been evidence in the record that Scoville had attempted to delay or dodge receipt of the notice of acceptance, I would agree with the majority. There is, however, no such evidence. In fact, the only evidence is that Scoville did *not* attempt to avoid receipt of the notice.

Since no material facts are in dispute, and the principal issue on appeal is the legal effect of Shop-Rite's notice, our review of this question of law is plenary.

An option contract is a promise that meets the requirements for the formation of a contract and limits the promisor's, in this case, Scoville's, power to revoke the offer to renew. See 1 Restatement (Second), Contracts § 25, p. 73 (1981). We have before us an option contract in which Scoville made what has sometimes been called an "irrevocable" offer creating a power of acceptance. See 3 A. Corbin, Contracts (Rev. Ed. 1996) § 11.1, p. 456; see also *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.*, 148 Conn. 21, 27, 166 A.2d 710 (1960) (new contract came into being as soon as defendants received notice that option was being exercised). Because an option contract creates an irrevocable offer binding the lessor to accept a properly exercised option to renew, "[the] requirements governing the time and manner of exercise of a power of acceptance under an option contract are applied strictly. It is reasoned that any relaxation of terms would substantively extend the

option contract to subject one party to greater obligations than he bargained for." 1 Restatement (Second), supra, § 25, comment (d), p. 75. Accordingly, "[u]nless the offer provides otherwise . . . an acceptance under an option contract is not operative until received by the offeror." Id., § 63, p. 151.

As illustrated in the Restatement for example: "A, for consideration, gives B an option to buy property, written notice to be given on or before a specified date. Notice dispatched before but not received until after that date is not effective to exercise the option." Id., § 63, comment (f), illustration 12, p. 155. This is so because "[o]ption contracts are commonly subject to a definite time limit, and the usual understanding is that the notification that the option has been exercised must be received by the offeror before that time." Id., § 63, comment (f), p. 155. Nevertheless, I do recognize that "[i]n cases in which notices had been sent before the deadline but not received until after deadline, the holding by some courts that the notices where timely . . . and by others that they were untimely . . . depended on such variant factors as the language of the leases, fault of the parties, and general policy considerations." (Citations omitted.) Annot., 29 A.L.R.4th 956, 960–61 (1984). Significantly, however, this annotation explains that "[i]t has been stated that a notice required to be 'given' by a certain date is insufficient and ineffectual if not received within the specified time." Id., 962, citing *Sy Jack Realty Co.* v. *Pergament Syosset Corp.*, 27 N.Y.2d 449, 452, 267 N.E.2d 462, 318 N.Y.S.2d 720 (1971).

Section 5 (c) of the lease provides in relevant part that the lessee, Shop-Rite, may exercise an option to extend the lease term for another five years "by *giving* notice to the Landlord six (6) months or more before the last day of the extended term . . . to and including the 31st day of July, 2003 . . . ." (Emphasis added.)

Section thirty of the lease provides in relevant part: "All notices due the Landlord shall be *sent* by telegram or registered or certified mail addressed to the person to whom rent is payable at the address to which payments of rent may be sent . . . ." (Emphasis added.)

As Corbin notes, when contracts are being made by correspondence, it is held in most cases that the contract is consummated at the time and place that the acceptance is mailed. But when, by the terms of an already consummated contract it is provided that one party shall have the power to produce certain legal results by giving notice, it is usually held that this means notice received in fact and not merely notice mailed. 3 A. Corbin, supra, § 11.8, p. 526; see 1 Restatement (Second), supra, § 63.

In *Smith* v. *Hevro Realty Corp.*, 199 Conn. 330, 335–36, 507 A.2d 980 (1986), our Supreme Court was called on, in part, to interpret the effect of an attempt by the lessee to exercise a right of first refusal. After concluding that the right of first refusal ripened into an option, the court examined the trial court's holding that the attempted exercise of the option was untimely. Id., 337. The court explained that the parties had "agreed that, to be effective, a reply to notice of an offer had to be made within thirty (30) days of the date of the mailing of [the notice]." (Internal quotation marks omitted.) Id. However, when the lessor notified the lessee-option holder that another party had submitted an offer, the lessor changed the terms, stating that "[t]he Lessee's option is exercisable pursuant to the terms of the existing lease in writing mailed . . . and postmarked no later than 12:00 midnight July 24, 1983." (Internal quotation marks omitted.) Id. The lessee's letter of acceptance was timely postmarked, but it was not received by the lessor until August 6 or 7, 1983. Id. The trial court had held that the late delivery of the acceptance rendered it ineffective and untimely. Because neither party had contested the timeliness of

the acceptance; id., 338 n.10; our Supreme Court stated that it would "not resolve this issue and [would] assume, arguendo, that [the lessee's] exercise of its offer was not untimely." Id., 338.

In *Smith*, our Supreme Court did explain that a renewal option in a lease is a continuing offer to lease for the extended lease term which offer is irrevocable until the time period fixed by the parties, which creates in the option holder the power to form a binding contract by accepting the offer in the manner agreed on by the parties. See id., 336. "To be effective, an acceptance of an offer under an option contract must be unequivocal . . . in exact accord with the terms of the option." (Internal quotation marks omitted.) Id., 339.

Section thirty of the lease agreement provides for the manner of *sending* notices. It did not relieve the offeree, Shop-Rite, of *giving* unequivocal notice of the acceptance to the plaintiff lessor within the time specified in the contract. Certainly, if the contract were to relieve Shop-Rite of the obligation of providing actual notice to the plaintiff of its intent to extend the option, § 5 could have provided that the option may be extended by *sending* notice to the landlord. The fact that the contract differentiated between giving notice for the exercise of the option in § 5 and sending notices by mail in § 30 leads me to the conclusion that words "giving" and "sent" are distinguishable. See generally *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 609, 830 A.2d 164 (2003) ("[t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" [internal quotation marks omitted]). Shop-Rite did not give an unequivocal acceptance of the renewal within the time specified in the lease agreement as § 5 (c) of the lease required. When Scoville received a notice of the post office's attempt

to deliver certified mail to him, he had no way of knowing the content of whatever communication had been sent to him. We do not know whether the slip left by the postal carrier even stated from whom the certified letter had been sent. Additionally, even if we assume that it stated that Shop-Rite had sent the letter, Scoville would have no way of knowing that it was an exercise of the option to renew because the parties had been in recent discussion about Scoville's possible $50,000 buyout of Shop-Rite's option to renew, as opposed to Shop-Rite's exercise of its option to renew.

Section 63 (b) of the Restatement clearly provides that "an acceptance under an option contract is not operative until received by the offeror." 1 Restatement (Second), supra, § 63 (b), p. 151. In this case, Shop-Rite had to give actual notice of its acceptance of the renewal term offered by the lease on or before January 31, 1998. Although it could have given actual notice to Scoville any time prior to the six month deadline, it waited until the eleventh hour to mail its acceptance, and it bore the risk of the notice not being timely received. As held in *Smith*: "Unless the parties have agreed to the contrary, acceptance under an option contract is not effective until it is *actually received* by the offeror." (Emphasis added.) *Smith* v. *Hervo Realty Corp.*, supra, 199 Conn. 337.

Accordingly, I would reverse the judgment of the trial court and remand the case for further proceedings.