Julius R. Peck *vs.* George C. Edwards et al.

Third Judicial District, New Haven, June Term, 1916.
Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

A written agreement provided that it should not be used as evidence of any admission or waiver of the provisions of an earlier agreement between the parties, in case of litigation respecting their rights under that instrument. *Held* that they might nevertheless acquiesce and consent to its use by the trial court, and that having done so in the present case neither litigant could be heard, upon appeal, to complain of the lower court's action in giving the paper such evidential weight as it deserved in determining the actual relations of the parties.

A contract executed in January, 1914, relating to the proposed sale of a patent right upon a chain attachment for automobile wheels, after prescribing the sums to be paid by the defendant purchasers and the protection they were to receive from the plaintiff vendor, recited that the "parties of the second part [the defendants] agree to take said patent according to the terms hereof, and manufacture and sell said chains before described pursuant to the terms hereof, provided they shall have decided, on or before" a certain date,

"that said chains are practical for the purposes intended and are a marketable article of merchandise according to their discretion and judgment." Another agreement, eleven months later, referred to the first, and provided that "in case the party of the second part purchases said patent the annual payments upon the purchase price of the same shall commence" April 1st, 1915. After experimental but unavailing work on the device had been carried on for a year or more, the defendants notified the plaintiff on March 29th, 1915, that they declined to purchase the patent. *Held* that the defendants having decided that the invention was not practical and marketable, there was no liability upon their part to pay the purchase price and complete the terms of the proposed sale.

Claims not made upon the trial in the court below nor assigned in the reasons of appeal, are not entitled to consideration by this court.

Argued June 7th—decided July 27th, 1916.

ACTION to recover instalments of the purchase price of a certain patented invention, and for an accounting of royalties claimed to be due under the contract of sale, brought to and tried by the Superior Court in Fairfield County, *Case, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

This action is based upon a written contract dated January 23d, 1914, by which the plaintiff agreed to sell and the defendants agreed to buy a certain patent chain attachment for automobile wheels. The defendants agreed to pay to the plaintiff for the sale, assignment and license of the patent, the sum of $1 per set of chains for trucks, and fifty cents per set of chains for any other automobiles, manufactured and sold by the defendants pursuant to the contract, by way of royalties, settlement to be made January 10th and July 10th in each year. The defendants in addition thereto agreed to pay the sum of $25,000 in annual instalments of $5,000 each, for the period of five years from October 1st, 1914, until the entire sum was paid. One provision of the contract was that the defendants agreed to take the patent according to the terms of

the contract, and manufacture and sell the chains described therein, pursuant to the terms thereof, provided the defendants "shall have decided, on or before July 1st, 1914, that said chains are practical for the purposes intended, and are a marketable article of merchandise, according to their discretion and judgment." It was further agreed "that if in the discretion" of the defendants, "it is determined, by October 1st, 1914, that said patent and the article manufactured and sold pursuant thereto, is a practical and salable article of merchandise, and that the title and use to said patent and the manufacture and sale of such articles pursuant to the same is an unassailable license, all in the discretion" of the defendants, "then in that event, the parties of the second part [the defendants] agree to pay the sum of $5,000 in addition to the sum of $5,000 due and payable under the terms of this contract on October 1st, 1914."

On November 23d, 1914, a second contract, relating to the terms of the original contract, was made between the parties, which, among other things, provided that: "It is further understood and agreed by and between the said parties that in case of any litigation between them on or in regard to the provisions of said contract of January 23rd, 1914, this agreement shall not be used by or against either party as evidence of any admission or waiver by either party of any of the provisions of said contract of January 23rd, 1914."

The pleadings disclose no subsequent written understanding of the parties, but upon the reading of the complaint and answer at the trial, and preliminary to the taking of testimony, the court called attention to the fact that there was no reply to new matter contained in a part of the answer. Counsel thereupon disclosed this second contract of the parties, dated November 23d, 1914. This was received in evidence,

and the acts of the parties from the time of its execution to the commencement of the present action was offered and received. It appears that the court, with this paper before it, under the circumstances just found and upon its admission, acquiesced in by both parties, disregarded the restriction it contains so far as to accord the terms of the second contract evidential weight upon the actual relations of the parties, wherever, in the court's judgment, the language of the paper called for its use and application.

The trial court also found that during the period following the execution of the first contract (January 23d, 1914) and October 1st, 1914, there were many interviews and much correspondence between the parties directed toward experimental work in testing the utility of the device and in making it merchantable and usable as one adapted for its avowed purpose. On October 1st, 1914, experimental work had not established the working and commercial value of the device, and the defendants had not exercised the option to purchase reserved to them in the original contract, nor had their action warranted any belief by the plaintiff that such option had been exercised up to that time. Shortly thereafter, or between that date and November 23d, 1914, there was controversy between the parties as to the facts just recited, and the second contract was executed on the last-named date. For some time after the execution of the second contract the defendants, still co-operating with the plaintiff, and with his active aid, to make the device merchantable and usable, advertised it, distributed it through their agents for testing purposes, and experimented with forgings in the process of its manufacture, after determining, in December, 1914, that castings which had up to that time been used in the test work could not be relied upon to produce a usable device, or one

that would stand the strain imposed upon it in actual service. The patent itself, which was granted late in March, 1914, was not assigned to the defendants until November 23d, 1914, and then only for the limited purpose specified in the contract of the parties of that date. During the stages of experimental work that followed the execution of the second contract on November 23d, 1914, it became evident that the expense attending the manufacture of the device from forgings would make it an unsalable product on the market. There was no proof, or attempt at proof, that there had been any sales of the device for which the defendants should account to the plaintiff. There was no offer of proof that the plaintiff had by his dealings with the defendants suffered, through any action of theirs, in any effort to exploit his device elsewhere. On the 29th day of March, 1915, the defendants formally notified the plaintiff that they declined to purchase the patent rights involved.

The trial court reached the conclusion that "there had been no purchase of the plaintiff's rights by the defendants, and this election to refuse to purchase was within their rights, and one which they might make at that time."

*Henry E. Shannon*, for the appellant (plaintiff).

*Robert E. DeForest*, for the appellees (defendants).

RORABACK, J. We have no occasion to consider the objection now made by the plaintiff, that the trial court should have disregarded the provision in the second contract which provided that it was not to be used by or against either party as evidence of an admission or waiver of any of the provisions of the first contract. This contention comes too late. Its admission was ac-

quiesced in at the time that the second contract was presented to the court. No objection was made to it, and both parties, by their consent, invited the court below to determine in an informal manner, which was pursued, the question as to the bearing of the second contract upon the terms and stipulations of the original one. *Vincent* v. *Mutual Reserve Fund Life Asso.*, 77 Conn. 281, 284, 58 Atl. 963. Furthermore, it is sufficient to say of this claim that it was not made in the trial of the case in the court below, and that it was not made in the reasons of appeal.

The substance of the plaintiff's assignments of error, properly presented by his reasons of appeal, was that the trial court erred in holding that the defendants had not accepted this invention, and that the sale of the same was not absolute under the terms of the contract. The law which governs these questions is well settled. "As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made. . . . If the offer does not limit the time for its acceptance, it must be accepted within a reasonable time. If it does, it may, at any time within the limit and so long as it remains open, be accepted or rejected by the party to whom, or be withdrawn by the party by whom, it was made." *Minneapolis & St. Louis Ry. Co.* v. *Columbus Rolling Mill Co.*, 119 U. S. 149, 151, 7 Sup. Ct. 168, 30 L. Ed. 376; *Boston & Maine Railroad* v. *Bartlett*, 57 Mass. (3 Cush.) 224; *Dickinson* v. *Dodds*, L. R. 2 Ch. Div. 463.

The plain interpretation of the language of the first

contract is that the decision of the defendants, within the limited period, that the invention of the chains was practical for the purposes for which it was intended and that the chains were marketable articles of merchandise, was made a condition precedent to any liability upon the part of the defendants. This decision was not made. The rights and liabilities of the parties were not to be alone determined under the provisions of the first contract. The second contract provides that neither of the parties will institute any suit against the other before the first of April, 1915, and that the defendants shall have free use of the patent until that time. It is also provided, in the second contract, that if the defendants purchased the patent the annual payments upon the purchase price should commence on the first day of April, 1915, the first annual payment to commence on this date, the others to follow annually. The second contract also contained this provision: "And it is further agreed as part of the consideration of this agreement that whereas the party of the second part [the defendants] has advanced to the party of the first part [the plaintiff] the sum of $2,500, as evidenced by the promissory note of said party of the first part for said amount, of even date herewith, and said party of the first part has assigned and delivered to the party of the second part said letters patent . . . as collateral security for the payment of said note. Now therefore, if the party of the second part purchases said patent then said sum of $2,500 so advanced by the party of the second part, as evidenced by said note, shall, with all interest due thereon be applied to the credit of said party of the second part upon said purchase price of said patent, and be deducted therefrom at the time of said first payment. And it is distinctly understood and agreed that if the party of the second part does not purchase said patent, then said

party of the second part shall hold said letters patent only as collateral security for the payment of said note with interest, and that until said note shall be paid in that event, the party of the second part shall have the right to said patent and the use of the same."

The provisions of both contracts, when read in connection with the finding, clearly show that the sale of this patent had not become absolute upon the 29th day of March, 1915, when the defendants notified the plaintiff that they declined to purchase.

Six of the assignments of error are not well made. It is enough to say of them that they are not supported by the record. The facts assumed in some of them do not appear in the record. Others, in so far as the court below deals with them, are refuted by the finding. The plaintiff has not sought to have the finding corrected, and it is therefore conclusive upon these questions, which this court will not now attempt to review.

There is no error.

In this opinion the other judges concurred.