[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (#108 and #109)
Before the court are the defendant Covenant Insurance Company's (Covenant) motion for summary judgment (#108) and the plaintiffs' (Cesar and Janina Brzezinek) motion for summary judgment (#109). In their motion, the Brzezineks contend that they entered into a contract of settlement with Covenant, which Covenant has breached. In its motion, Covenant claims that no contract was created. For the following reasons, the court grants judgment in favor of Covenant.
 I BACKOROUND
In their complaint, which was filed on December 19, 2000, the Brzezineks set forth two claims, based on the same series of events. In the first count, they claim that Covenant breached a contract to settle a claim. The Brzezineks allege the following facts in their first count. On December 28, 1997, they suffered bodily injuries resulting from the negligence of Covenant's insured, John Ladd, III (who is not a party to this action), in the operation of an automobile. (See Complaint, ¶ 3.)[1] Thereafter, they contend, Covenant agreed to accept liability CT Page 12314 and entered into settlement negotiations with their attorney. (See Complaint, ¶ 4.)
The following facts are set forth in the Brzezineks' affidavit, which was submitted in support of their motion and in opposition to Covenant's motion. In November, 1999, their attorney communicated to them Covenant's offer to settle the case. This offer included $12,000.00 for Cesar Brzezinek and $15,000.00 for Janina Brzezinek. (See Brzezineks' affidavit, ¶ 3.) The Brzezineks rejected Covenant's offer and asked their attorney "to argue for more money." (Brzezineks' affidavit, ¶ 4.) In early December, 1999, Covenant presented a new offer, consisting of $30,000.00, $13,000.00 for Cesar Brzezinek and $17,000.00 for Janina Brzezinek. (See Brzezineks' affidavit, ¶ 5.) On or about December 13, 1999, they met in their attorney's office, decided to accept Covenant's new offer, and signed releases agreeing to the settlement. (See Brzezineks' affidavit, ¶ 6.) Their attorney did not communicate the acceptance of the offer until February 14, 2000. (See Brzezineks' affidavit, ¶ 7.)
In the second count of the complaint, entitled "Detrimental reliance, equitable estoppel," they incorporate the first count's allegations, and allege that they relied on the settlement agreement, which they contend they accepted on December 12, 1999, by not filing suit against Covenant's insured. (See Complaint, ¶ 13.) As a result, they claim that Covenant should be equitably estopped from denying that a settlement agreement was reached and/or from denying recovery to them in this action. (See Complaint, ¶ 14.)
In support of its motion, Covenant submits the affidavit of Deborah Garuti, an employee in its claims department, which sets forth the following facts. On Covenant's behalf, she communicated an offer of settlement to the Brzezineks' attorney on December 3, 1999. (See Garuti affidavit, ¶ 4.) On or about February 14, 2000, the Brzezineks' attorney contacted her, "in an attempt to accept the offer of settlement made on or about December 3, 1999." (Garuti affidavit, ¶ 5.) Garuti declined what she characterized as an "attempt to accept the December 3, 1999 offer as the offer expired on December 27, 1999." (Garuti affidavit, ¶ 6.) Further, she states, "[a]t no point in time did I, on behalf of Covenant Insurance Company, waive the applicability of the statute of limitations period nor did the Brzezinek's [sic] or their attorney request that an extension of the statutory period for filing a claim be granted." (Garuti affidavit, ¶ 7.) She noted also that the Brzezineks did not contact her in order to accept the December 3, 1999 offer prior to February 14, 2000. (See Garuti affidavit, ¶ 8.) She also states that there was "no indication" from the Brzezineks' attorney that Covenant's settlement offers "made on December 3, 1999 were CT Page 12315 acceptable until February 14, 2000." (Garuti affidavit, ¶ 9.)
Covenant filed its motion for summary judgment (#108) on June 20, 2001, accompanied by a memorandum of law,[2] and by Garuti's affidavit. On June 22, 2001, the Brzezineks filed their motion for summary judgment (#109), accompanied by their affidavit; a letter from Garuti, dated March 28, 2000 (which sets forth many of the same facts later recited in her affidavit, as set forth above); a letter to Garuti from their attorney, dated February 14, 2000, communicating the Brzezineks' acceptance; copies of three releases; and a copy of Garuti's affidavit, cited above. On the same date, they filed a notice (#110), which states that the court should treat their motion for summary judgment "in lieu of the opposing affidavits and supporting documents as set forth in section 17-45 of the Practice Book." Copies of the same documents supporting their motion were submitted again. On July 6, 2001, Covenant filed its memorandum of law in opposition to the Brzezineks' motion (#111). The court heard oral argument as to both motions on July 16, 2001. After reviewing the relevant pleadings and submissions, the court issues this memorandum of decision.
 II STANDARD OF REVIEW
Pursuant to Practice Book § 17-49, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v.St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753 (2000).
"The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Miller v. United Technologies Corp., 233 Conn. 732,751-52, 660 A.2d 810 (1995). "[T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such CT Page 12316 issues exist." (Internal quotation marks omitted.) Harvey v. BoehringerIngelheim Corp., 52 Conn. App. 1, 5, 724 A.2d 1143 (1999); see also Nolanv. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990).
While "the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552,554-55, 707 A.2d 15 (1998). Summary judgment procedure would be defeated as a whole if the mere assertion that a material factual dispute existed could force a case to trial. See Great County Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997).
Where there are no facts in dispute, it is appropriate for the court to treat the issues as questions of law. See Heyman Associates No. 1 v.Insurance Co. of the State of Pennsylvania, 231 Conn. 756, 790,653 A.2d 122 (1995). See also Practice Book § 17-49. Here, as reflected above, in the papers submitted by the parties on their cross motions for summary judgment, the material facts are not in dispute.
 III DISCUSSION A. Contract Formation
The Brzezineks move for summary judgment on the ground that they accepted Covenant's December 3, 1999 offer, which was not accompanied by a time limit as to its duration, on or about December 12, 1999, within a reasonable time. They argue that, although they did not communicate their acceptance until February 14, 2000, a complete contract was formed. See plaintiffs' memorandum of law in support of the motion for summary judgment (Plaintiffs' Memo.), pp. 7-9. In response, Covenant contends that, under Connecticut law, an offeree cannot accept an offer by communicating acceptance to someone other than the offeror. See Covenant's memorandum of law in opposition to the plaintiffs' motion for CT Page 12317 summary judgment (Deft.'s Memo.), p. 7. As the facts demonstrate, there is no dispute that, although they communicated their acceptance to their own attorney, the Brzezineks did not communicate their acceptance to Covenant until February 14, 2000. This was forty-nine days after the expiration of the two year statute of limitations period concerning the December 28, 1997 automobile accident involving Covenant's insured. See General Statutes § 52-584.
It is undisputed that Covenant's December 3, 1999 offer did not contain a time limit for acceptance. As both parties note, in Connecticut, a contract offer which does not limit the time for its acceptance "must be accepted within a reasonable time." Peck v. Edwards, 90 Conn. 669, 674,98 A. 325 (1916).
The Brzezineks' argument that their signing of the releases and their communications to their own attorney of their willingness to accept the December 3, 1999 offer constituted acceptance thereof is contrary to Connecticut law. "Acceptance is operative, if transmitted by means which the offeror has authorized, as soon as its transmission begins and it is put out of the offeree's possession . . . irrespective of whether or when it is received by the offeror. . . . The plaintiff's act of signing the written counteroffer was not sufficient to constitute an acceptance of the counteroffer. The act of signing the counteroffer in this case failed to communicate the acceptance to [the offeror] or his agent and failed to put the acceptance out of the plaintiff's possession. It was, therefore, ineffective to create a contract." (Internal quotation marks and citations omitted.) Lyon v. Adgraphics, Inc., 14 Conn. App. 252, 255,540 A.2d 398, cert. denied, 208 Conn. 808, 545 A.2d 1103 (1988).
Here, it is also undisputed that transmission of the Brzezineks' acceptance to Covenant did not occur until February 14, 2000. The signing of the releases in their attorney's office and their communications to him on or about December 12, 1999 did not accomplish acceptance because nothing left their or their agent's possession for transmission to Covenant. Accordingly, their actions on that date did not create a contract between them and Covenant.
Whether or not the February 14, 2000 acceptance of the December 3, 1999 offer was made within a reasonable time and, therefore, created a contract, presents a different issue. "Ordinarily, what constitutes a reasonable length of time is largely a question of fact to be determined in light of the particular circumstances of each case." Katz v. Town ofWest Hartford, 191 Conn. 594, 598, 469 A.2d 410 (1983). See alsoSchlicher v. Schwartz, 58 Conn. App. 80, 86, 752 A.2d 517 (2000). Where the time in question is clearly not reasonable, the court may decide the issue as a matter of law. See Eddy v. Schiebel, 112 Conn. 248, 255, CT Page 12318152 A. 66 (1930) ("within a reasonable time may become a question of law under all the circumstances of the case. . . ."); Loomis v. NormanPrinters Supply Co., 81 Conn. 343, 347, 71 A. 358 (1908) ("palpably beyond the limits of reason.").
The record in this case amply demonstrates that the February 14, 2000 response was belated. The Brzezineks' attorney's letter of that date to Covenant, with which the releases were enclosed, notes that the date of the accident in question was "12/28/97." The first sentence states, "[p]ursuant to your offer of December 10, 1999 or thereabouts, my clients have agreed to accept it." It is clear that the entire purpose, for Covenant, in making its settlement offer, was to resolve extant claims. As the Brzezineks' attorney's letter reflects, as of February 14, 2000, the date of acceptance, the claims were barred by the operations of the applicable two year statute of limitations. See General Statutes §52-584. As of that date, the Brzezineks' claims were no longer viable. Under the circumstances, Covenant's offer could have been accepted only prior to the running of the statute of limitations. Here, where the acceptance was transmitted weeks after the limitations period expired, the acceptance was untimely. Accordingly, no contract was created thereby.
This analysis is further supported by the fact that, contrary to Connecticut law, such a contract would lack consideration. "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration." D'Ulisse-Cupo v. Board of Directors of NotreDame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987). Without question, the consideration for the settlement agreement to be received by Covenant was forbearance from suit, supported by releases of claims from the Brzezineks. "Forbearance from suit is, of course, valid consideration for a contract if the claim on which the suit was threatened was valid and enforceable." (Internal quotation marks omitted.) Iseli Co. v. Connecticut Light Power Co., 211 Conn. 133,136, 558 A.2d 966 (1989). However, if the claimant has no reasonable ground for belief in the viability of the claim, forbearance is not a sufficient consideration. See Id., citing Dick v. Dick, 167 Conn. 210,225, 355 A.2d 110 (1974). The giving up of such a non-existent right "is not the relinquishment of a thing of value, and does not constitute a sufficient consideration for a contract." Warner v. Warner, 124 Conn. 625,632, 1 A.2d 911 (1938).
Here, at the time of acceptance, February 14, 2000, the Brzezineks' claims were no longer enforceable since, by law, they were time-barred. As a result, their forbearance from suit did not amount to consideration for the contract. CT Page 12319
At oral argument, the Brzezineks referred the court to the decision inMiller v. United Technologies Corp., Superior Court, judicial district of Fairfield at Bridgeport, No. 227518 (July 16, 1993, Fuller, J.). There, the court, in analyzing a question concerning the acceptance of an offer of judgment, stated that "[u]nder contract law, a true meeting of the minds is no longer essential to the formation of a contract, and rights and obligations may arise from the acts of the parties, usually their words, upon which a reasonable person would rely. State v. Smith,210 Conn. 132, 140 [554 A.2d 713 (1989)]." In Smith, the Supreme Court cited the 1982 edition of Professor Farnsworth's Contracts, at 3.6. There, the treatise explains the modern view that contract language is to be treated objectively. "According to the objectivists, a party's mental assent was not necessary to make a contract. If his actions, judged by a standard of reasonableness, manifested an intention to agree, the real but unexpressed state of his mind was irrelevant." Farnsworth,Contracts, § 3.6, pp. 113-114 (1982). Courts generally accept the objectivist approach today. See id.
Covenant's offer, when viewed in this light, could have been accepted only within the period of time prior to the end of the limitations period. It would be unreasonable to permit acceptance to be effective thereafter, since for the offeror, the entire purpose of the contract had ceased to exist. The court may not create a contract for the parties where none existed. See Levine v. Massey, 232 Conn. 272, 278-279,654 A.2d 737 (1995).
 B. ESTOPPEL
In addition to breach of contract, the Brzezineks claim, in the second count of their complaint, equitable estoppel. Analogizing this case to one involving an option for the renewal of a lease, they rely onXanthakey v. Hayes, 107 Conn. 459, 468, 140 A. 808 (1908). There our Supreme Court stated, in explaining its prior decision in Fountain Co.v. Stein, 97 Conn. 619, 626, 118 A. 47 (1922) ("Fountain"), "[o]ur holding was this: [w]e think the better rule to be that in cases of wilful or gross negligence in failing to fulfil a condition precedent of a lease, equity will never relieve. But in case of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." (Internal quotation marks omitted.) Xanthakey v. Hayes, supra.
In contrast to the leasehold issues addressed in those decisions, this case, as noted above, involves a situation where a contract was never CT Page 12320 formed. The Brzezineks never had any contractual rights. Instead, the second count of the complaint, like the first, is premised on a contract which the Brzezineks allege was accepted by them on December 12, 1999. As stated above, that contention is contrary to Connecticut law.
In addition, our Supreme Court has continued to find that lease terminations, which involve issues concerning rights to the possession of real property, invoke the equity jurisdiction of the court. "Equity abhors . . . a forfeiture. . . . It is well settled that equity will relieve against the forfeiture of a lease for the nonpayment of rent." (Internal quotation marks and citations omitted.) Fellows v. Martin,217 Conn. 57, 65, 584 A.2d 458 (1991). See also Cumberland Farms, Inc.v. Dairy Mart, Inc., 225 Conn. 771, 779, 627 A.2d 386 (1993) (citingFountain). The rule set forth in Fountain was discussed extensively by our Appellate Court in R R of Connecticut, Inc. v. Stiegler,4 Conn. App. 240, 493 A.2d 293 (1985), again in the context of a late exercise of an option to renew a lease, not a case involving a contract which was never formed and which was unrelated to a leasehold. This court finds that Fountain and the cases which follow it do not apply to the facts at issue.
Similarly unavailing is the Brzezineks' reference to Smith v. HevroRealty Corp., 199 Conn. 330, 337-338, 507 A.2d 980 (1986). That case involved a lease containing an option contract for the sale of real property and the court's interpretation of the lessor's communication which indicated that tenant's option was exercisable if postmarked by a specific date. See id. Here, no communication from Covenant stating that the Brzezineks could accept the settlement offer after their claims ceased to exist is alleged.
As the doctrine of equitable estoppel has developed, our appellate courts have emphasized that "[t]here are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . Further, [i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. . . . There must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury. . . . The modern estoppel in pals is of equitable origin, though of equal application in courts of law. . . . Its office is . . . to show what equity and good conscience require, CT Page 12321 under the particular circumstances of the case . . . (Internal quotation marks and citations omitted.) Green v. Connecticut Disposal Service,Inc., 62 Conn. App. 83, 91-92, 771 A.2d 137, cert. denied, 256 Conn. 912, ___ A.2d ___ (2001). Equitable estoppel requires "misleading conduct by a party that causes another to act based on that conduct." SKW Real Estate Ltd. Partnershipv. Mitsubishi Motor Sales of America, Inc., 56 Conn. App. 1, 8, 741 A.2d 4
(1999), cert. denied, 252 Conn. 931, 746 A.2d 793 (2000).
Here, it is undisputed that Covenant did not engage in deceptive conduct, or anything amounting to constructive fraud. Covenant did not mislead the Brzezineks to their injury. The Brzezineks make no such allegation. For example, no claim is made that Covenant stated that it would waive the statute of limitations. See Bealle v. Nyden's, Inc.,245 F. Sup. 86, 94 (D.Conn. 1965).
Clearly, had they exercised due diligence, the Brzezineks would have accepted the settlement offer in a timely manner. They had more than a convenient means of acquiring knowledge of the true state of things since the expiration of the statute of limitations was a matter of law, the knowledge of which is chargeable to them. See Hatchco Corp. v. DellaPietra, 195 Conn. 18, 21, 485 A.2d 1285 (1985) (parties contract with reference to existing law). Under all these circumstances, as a matter of law, the Brzezineks cannot prevail on their equitable estoppel claim.
 IV CONCLUSION
For the foregoing reasons, the defendant's motion for summary judgment is granted and the plaintiffs' motion for summary judgment is denied. Judgment shall enter in favor of the defendant. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT