MIDDLESEX MUTUAL ASSURANCE COMPANY *v.* BRIAN VASZIL ET AL. (AC 25437)

Dranginis, Flynn and McLachlan, Js.

Argued January 20—officially released June 7, 2005

*Carl F. Yeich*, for the appellant (plaintiff).

*Charles E. Hickey*, for the appellees (named defendant et al.).

*Opinion*

McLACHLAN, J. The plaintiff, the Middlesex Mutual Assurance Company, appeals from the summary judgment rendered by the trial court in favor of the defendants Brian Vaszil and Robert Vaszil.[1] The plaintiff

---

[1] A social guest at the apartment was originally also named as a defendant in the subrogation action, but the plaintiff did not name her as a party to this appeal. The effect of our decision is limited to the Vaszils, and we refer to them in this opinion as the defendants.

brought this action in subrogation of its insured's right to compensation from the defendants. The court found that the defendants' lease created no right of subrogation and, thus, no obligation to the landlord's insurance company for fire loss Brian Vaszil allegedly caused to the landlord's apartment building. On appeal, the plaintiff claims that the court improperly rendered summary judgment because the written lease terms demonstrate the defendants' expectations that the tenant would be liable to the landlord for damage caused to the premises, thereby making subrogation appropriate. We agree and reverse the judgment of the trial court.

This issue on appeal is whether the language of the defendants' lease with the landlord was sufficient to permit the landlord's insurance company to subrogate against the defendants when the lease contained no express provision that the insurance company would have that right. We hold that subrogation exists in favor of the landlord's insurer when the lease contains specific language making the tenant liable for damage he causes to the premises.

In 2001, Brian Vaszil was a student at the University of Connecticut. He occupied one unit of an apartment building at Hunting Heights in Storrs, pursuant to a written lease with the owner, Hunting Lodge Partners, LLC (Hunting). Robert Vaszil, Brian Vaszil's father, cosigned the lease as a guarantor. The plaintiff provided insurance for Hunting. The insurance policy specified that if Hunting had any right to recover damages from another party, those rights were deemed transferred to the plaintiff to the extent that it paid Hunting. It also required Hunting to do everything necessary to secure those rights and to do nothing after the loss to impair them. The lease between Hunting and the defendants required that the tenant not damage the apartment, repair any damage prior to leaving the building and reimburse Hunting for any amount expended to fix dam-

age.[2] The lease did not contain the word subrogation or a specific provision stating that Hunting's insurer had a right of subrogation.

On December 8, 2001, the apartment building was damaged in a fire for which the plaintiff subsequently paid Hunting in excess of $250,000. The plaintiff alleged that Brian Vaszil negligently lit and maintained a candle in his unit while he entertained a female guest. On February 15, 2002, the plaintiff brought this action in subrogation against Brian Vaszil and against Robert Vaszil as guarantor of the lease.[3] The defendants filed a motion for summary judgment, arguing that the plaintiff had no right of subrogation. On October 28, 2003, the court denied the motion. On November 14, 2003, the defendants filed a motion to reargue and, on April 21, 2004, the court rendered summary judgment in favor of the defendants. The court found that the provisions of the lease obligating the tenant to refrain from causing damage to the apartment and to repair such damage did not create an express agreement obligating the tenant to the landlord's insurer for the fire loss.

Summary judgment is appropriate when "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and

---

[2] The lease provides: "5. CARE OF THE APARTMENT . . . You will not destroy or damage any part of the Apartment . . . ."

"11. REMOVAL OF PROPERTY. When this lease ends, you will leave the Apartment and remove all your property and the property of others and leave the Apartment in good and clean condition and repair any damage caused by yourself or others. . . ."

"13. DEFAULT . . . If you do not do any of the things you promise to do under this lease, you will pay us the amount that we pay to do the things that you did not do. . . ."

[3] We note that although the plaintiff's claim for $250,000 is for the loss caused by the fire, the defendants are liable only for damage to the "Apartment," as referred to in the lease. The record does not indicate the extent, if any, of the damage to the building beyond the apartment leased by Brian Vaszil. We express no opinion as to the correct construction of the term "Apartment," as that issue is not presently before us.

that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995); see also Practice Book § 17-49. Thus, because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary. *Faigel* v. *Fairfield University*, 75 Conn. App. 37, 40, 815 A.2d 140 (2003).

I

The plaintiff claims that the lease provisions were sufficient to permit subrogation, and the defendants argue that Connecticut courts require specific, express language conferring on an insurer the right of subrogation against a tenant. Insurance companies seeking subrogation proceed against the responsible party under the theory of equitable subrogation, not conventional subrogation.[4] *Wasko* v. *Manella*, 269 Conn. 527, 533–34, 849 A.2d 777 (2004). "[T]he right of [equitable] subrogation is not a matter of contract; it . . . takes place as a matter of equity, with or without an agreement to that effect." (Internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 371, 672 A.2d 939 (1996). Equitable subrogation is based on the policies of equity and fairness, and "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) Id. Furthermore, "[s]ubrogation is a highly favored doctrine

---

[4] Conventional subrogation is closely associated with assignment and arises only by agreement between two parties that, following a loss, one party, under no obligation to do so, pays the debt of another. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 371, 672 A.2d 939 (1996). When the insurer clearly has an interest in the matter and acquires that interest before the loss occurs, conventional subrogation is not appropriate. Id., 372.

. . . which courts should be inclined to extend rather than restrict." (Citations omitted.) Id., 372.

In *DiLullo* v. *Joseph*, 259 Conn. 847, 792 A.2d 819 (2002), our Supreme Court held that the insurer's right of subrogation against a tenant should be left "to the specific agreement of the parties . . . ." Id., 854. In its subrogation analysis, the court recognized that "whether subrogation would or would not apply ordinarily would depend . . . on a case-by-case analysis of the language of the insurance policies and leases involved." Id., 853. *DiLullo* concerned a holdover tenant and, as such, there was no lease to construe, but the court recognized that if there had been a lease, it would need to be analyzed. Id. The rule of *DiLullo* that there is no right of subrogation absent an express agreement is merely a default rule. The court must determine the appropriate interpretation of the lease language.

The leading case that asserts that there is no right of subrogation absent a specific agreement is *Sutton* v. *Jondahl*, 532 P.2d 478, 482 (Okla. App. 1975) (precluding subrogation because law considers tenant coinsured of landlord, and because landlord and tenant have insurable interest in property). Our Supreme Court has criticized *Sutton*, concluding that "under traditional rules of insurance law, a tenant is not a coinsured on his landlord's fire insurance policy simply because he has an insurable interest in the premises and pays rent." *DiLullo* v. *Joseph*, supra, 259 Conn. 853. The court expressly agreed that subrogation generally requires a case-by-case analysis of the insurance policies and leases involved. Id. By disagreeing with the fundamental principles of the *Sutton* rule, the court preserved the right of subrogation in situations in which an analysis of relevant lease language would yield a determination that subrogation is appropriate.

In the present case, the lease provides that the tenant may not damage the apartment. If he does, he must

repair any damage by the end of the lease term. Furthermore, if he violates any of the provisions of the lease and fails to repair any damage, he will reimburse the landlord for any amount the landlord spends to make repairs. Considered together, those provisions notify the tenant that he is required to repair any damage he causes and, if he fails to do so, will be liable to the landlord. The lease clearly obligates the tenant to repair or to pay the landlord for any damage he causes. Subrogation allows a party who has paid a debt to "step into the shoes" of another to assume his or her legal rights against a third party to prevent unjust enrichment. R. Keeton & A. Widiss, Insurance Law (1988) § 3.10 (a) (1), p. 219. Thus, when the plaintiff effectively stepped into the landlord's shoes by paying for the fire damage, it assumed the landlord's right to receive damage compensation from the defendants. In short, the plaintiff assumed the landlord's right to bring an action against the defendants for that compensation.

The defendants argue that *DiLullo* requires language specifically indicating the right of subrogation. They cite a number of Superior Court cases to support their position.[5] We disagree with those cases. The right of subrogation exists when the language of the lease clearly notifies the tenant of his liability for damage he causes. "The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity

[5] See *Hartford Fire Ins. Co.* v. *Warner*, Superior Court, judicial district of Windham at Putnam, Docket No. 68363 (December 18, 2003) (36 Conn. L. Rptr. 215) (precluding subrogation action by landlord's insurer when no specific agreement contained in written lease); *Nationwide Ins. Co.* v. *Comito*, Superior Court, judicial district of New Haven at Meriden, Docket No. 270188 (June 6, 2002) (32 Conn. L. Rptr. 290) (precluding subrogation action when lease language was not express agreement making tenant liable); *Roy* v. *Ferraro*, Superior Court, judicial district of New Britain, Docket No. 502798 (May 23, 2002) (precluding subrogation when lease did not contain express provision permitting such action).

adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." (Internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 371. We favor the reasoning in *Westchester Fire Ins. Co.* that there is "no logical reason to permit a tortfeasor to be unjustly enriched by virtue of having its debt paid by the insurance company of a party who had the foresight to obtain insurance coverage, and thus to escape all liability for its wrongdoing . . . ." Id., 372–73. Accordingly, the trial court's determination that the lease created no right of subrogation was improper.

II

Additionally, we note that the defendants raise two policy issues in support of their argument. First, they argue that allowing the right of subrogation in this case will result in significant economic waste in the form of multiple insurance policies. Second, they argue that permitting subrogation without specific language in the lease will spring substantial liability on unsuspecting tenants. We are not persuaded by either argument.

The plaintiff's conclusion that not requiring language specifically indicating subrogation in the lease will result in multiple insurance policies on apartment buildings by landlords and tenants and, thus, cause economic waste is valid in light of *DiLullo*[6] and Connecticut's long history disfavoring such waste.[7] We are not convinced, however, that it carries more weight than the equitable nature of subrogation. Moreover, adopting a rule that

---

[6] The "duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants." *DiLullo* v. *Joseph*, supra, 259 Conn. 854, citing *Peterson* v. *Silva*, 428 Mass. 751, 754, 704 N.E.2d 1163 (1999) ("[i]t surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy").

[7] See, e.g., *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 154, 763 A.2d 1011 (2001).

requires landlords to include specific subrogation language in their leases would not alleviate the waste concern. Under such a rule, it would be permissible "for a landlord and tenant to enter into an express agreement or lease provision that would place responsibility for fire damage upon the tenant." *Cambridge Mutual Fire Ins. Co.* v. *Crete*, 150 N.H. 673, 676, 846 A.2d 521 (2004). Thus, a landlord need only include subrogation language in the lease, and tenants who choose to comply will be required to procure insurance to cover the apartment, resulting in multiple policies despite the language specifically establishing the right of subrogation. Lease language alone would be insufficient to cure waste.

We reiterate that the goal of equitable subrogation is to avoid injustice by requiring payment from the party that occasioned the harm. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 371. In such a case, when financial injustice and some potential for economic waste collide, subrogation jurisprudence places the weight of authority on preventing injustice. Accordingly, we extend the right of subrogation when the lease language supports its use.

We also find unpersuasive the defendants' assertion that permitting subrogation absent an express provision in the lease will put tenants in potential financial jeopardy without clear notice. A conclusion consistent with that reasoning would assume that the average tenant expects to be exempt from liability merely because the landlord had the prudence to obtain insurance. It is sound public policy that we require people to be responsible for their negligence. Moreover, the lease in this case clearly made the tenant liable to the landlord for any damage the tenant caused, either by repairing the damage himself or by reimbursing the landlord for repairs. Thus, because the tenant was apprised that he would be required to pay for damage he caused, it was appropriate that the landlord's insurer would have a

right to receive compensation from the tenant when the insurer covered those costs. Furthermore, permitting subrogation prevents waste because it encourages tenants to exercise due care. We repeat the principle that there is "no logical reason" for a tortfeasor to have its debt paid by the insurance company of a party who had the foresight to obtain coverage. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 372–73. We defer to the policy of extending subrogation when the lease language makes it reasonable to do so. See id., 371–72.

The judgment is reversed and the case is remanded with direction to deny the defendants' motion for summary judgment and for further proceedings according to law.

In this opinion FLYNN, J., concurred.

DRANGINIS, J., dissenting. Respectfully, I dissent from the majority opinion because it is contrary to the law of equitable subrogation, as it pertains to the rights of landlords and tenants, and results in the type of economic waste that our Supreme Court held is to be avoided as a matter of public policy. See *DiLullo* v. *Joseph*, 259 Conn. 847, 853–54, 792 A.2d 819 (2002). In addition, the majority's decision misapplies the tenets of contract construction; see, e.g., *Rund* v. *Melillo*, 63 Conn. App. 216, 220, 772 A.2d 774 (2001); and the standard applicable to motions for summary judgment. I would affirm the trial court's granting of the motion for summary judgment filed by the defendants Brian Vaszil and Robert Vaszil[1] because the standard form lease the parties used does not contain an express agreement between the landlord, the plaintiff's insured, and the Vaszils regarding the right of subrogation of the plaintiff, the Middlesex Mutual Assurance Company.

[1] See footnote 1 of the majority opinion.

I agree with the majority's statement of the facts that underlie this action, including its observation that the lease does not contain the word subrogation or an express provision that the plaintiff has the right to proceed against the tenants for damage caused to the landlord's property. I would add, however, that Brian Vaszil was not the only tenant of unit 19-5 in the apartment building. See footnote 3. An important procedural fact is the trial court's reasoning in rendering summary judgment. Following reargument on the motion for summary judgment, the court concluded "that the provisions of the lease obligating the tenant not to cause damage to the apartment and to be responsible for repairing any such damages do not rise to a level of creating an *express agreement* noticing and obligating the tenant to be responsible for the fire loss in this case. The court further finds that no other provision of the lease creates such an obligation." (Emphasis added.)

The majority sets forth the well-known general rule that applies to motions for summary judgment; Practice Book § 17-49; but omits the tenets that inform the standard that applies to such motions. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, *under applicable principles of substantive law*, entitle him to a judgment as a matter of law . . . and *the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 800, 732 A.2d 207 (1999). "The issue must be one which the party opposing the motion is entitled to litigate under [its] pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Internal quotation marks omitted.) *New Milford*

*Savings Bank* v. *Roina*, 38 Conn. App. 240, 245, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995). "The test is whether a party would be entitled to a directed verdict on the same facts. . . . The purpose of a complaint . . . is to limit the issues at trial, and it is calculated to prevent surprise. . . . It must provide adequate notice of the facts claimed and the issues to be tried. . . . In order to surmount a motion for summary judgment, a party must demonstrate that there exists a genuine issue of material fact. . . . Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." (Citations omitted; internal quotation marks omitted.) Id., 244.

"Although the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.) *Altfeter* v. *Naugatuck*, supra, 53 Conn. App. 801. "Equally well settled is that the trial court does not sit as a trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Field* v. *Kearns*, 43 Conn. App. 265, 270, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996).

I

THE SUBSTANTIVE LAW

In *DiLullo* v. *Joseph*, supra, 259 Conn. 850, our Supreme Court addressed the question of an insurer's

right to bring a subrogation action against its insured's tenant who held over under an oral lease. "The dispositive issue in this appeal is whether, in the *absence of a specific agreement* covering the question, a fire insurer of leased premises has a right of subrogation against a tenant for negligently causing a fire." (Emphasis added.) Id., 848. In affirming the trial court's granting of the tenant's motion for summary judgment, the court reasoned, "in large part, upon the principle that subrogation, as an equitable doctrine, invokes matters of policy and fairness. . . . One such policy implicated by the issue presently before us is that disfavoring economic waste. See *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 154, 763 A.2d 1011 (2001) (policy against economic waste long recognized in our jurisdiction). This strong public policy convinces us that it would be inappropriate to create a default rule that allocates to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer. Such a rule would create a strong incentive for *every* tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant. This is precisely the same value or replacement cost insured by the landlord under his fire insurance policy. Thus, although the two forms of insurance would be different, the economic interest insured would be the same. This duplication of insurance would, in our view, constitute economic waste and, in a *multiunit building*, the waste would be *compounded by the number of tenants*. See *Peterson* v. *Silva*, [428 Mass. 751, 754, 704 N.E.2d 1163 (1999)] ('[i]t surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy'). We think that our law would be better served by having the default rule

of law embody this policy against economic waste, and by leaving it to the *specific agreement* of the parties if they wish a different rule to apply to their, or their insurers', relationship." (Citation omitted; emphasis added.) *DiLullo* v. *Joseph,* supra, 853–54.

In its amended complaint, the plaintiff alleged the following relevant facts. The plaintiff issued an insurance policy for a *multiunit apartment building* owned by the landlord. The *apartment building* was destroyed by a fire that began in the bedroom of apartment unit 19-5 that was leased to Brian Vaszil *and others.* At the time, Brian Vaszil was a student at the University of Connecticut at Storrs and maintained a permanent residence with his parents elsewhere. The fire allegedly started as a result of his negligence when he lit a candle. As a result of his alleged negligence, the insured suffered property damage in excess of $250,000. The plaintiff has paid the loss pursuant to the terms of the policy. The landlord has subrogated and assigned all of its rights to the plaintiff.[2] The complaint also alleges that the provisions of the lease applicable to the tenants of *unit 19-5* required the tenants to care for the *unit* and its appliances, and not destroy or damage the *unit.* The amended complaint does not allege that the lease contains an express or specific agreement regarding its right of subrogation.

The construction of the effect of pleadings is a question of law over which this court exercises plenary review. See *Miller* v. *Eagan,* 265 Conn. 301, 308, 828

---

[2] The applicable policy of insurance provides in relevant part: "K. Transfer Of Rights Of Recovery Against Others To Us

"1. Applicable to Businessowners Property Coverage:

"If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. . . ."

A.2d 549 (2003). As noted in part III, to withstand a motion for summary judgment, the issue raised by the facts alleged in the complaint must be one a party may litigate under applicable principles of substantive law. *Altfeter* v. *Naugatuck*, supra, 53 Conn. App. 800; *New Milford Savings Bank* v. *Roina*, supra, 38 Conn. App. 245. Although the plaintiff alleged and presented evidence of its right to subrogate under the insurance policy, it does not allege an express agreement between the landlord and the Vaszils to that effect. Under substantive law, the agreement at issue is the one between the landlord and the Vaszils, not the agreement between the plaintiff and its insured. No matter what construction is given the amended complaint, the plaintiff cannot prevail as a matter of law in the absence of an *express agreement* between the landlord and the Vaszils.

Furthermore, construing the allegations of the complaint in the plaintiff's favor, one can conclude only that they imply that *every* person who signed the landlord's lease for a unit in the apartment building would have to insure the entire building to protect himself or herself from catastrophic loss in the event of a fire, which is also the substance of the plaintiff's argument on appeal. If, as the majority has done, this implication is given effect, every tenant would be required to procure insurance to protect the entire apartment building, which is contrary to the public policy against economic waste that results when multiple parties insure the same economic interest. "[I]n most instances, neither landlords nor tenants ordinarily expect that the landlord's insurer would be proceeding against the tenant, unless expert counseling to that effect had forewarned them." *DiLullo* v. *Joseph*, supra, 259 Conn. 854.

## II

### CONTRACT CONSTRUCTION

Whether the trial court properly granted the Vaszils' motion for summary judgment is controlled by whether

the lease contains an express or specific agreement regarding the plaintiff's right of subrogation. "[I]n the absence of an express agreement between the parties covering the question, there is no right of subrogation on the part of a landlord's fire insurer against a tenant of the landlord's premises." Id., 850–51. "[S]uch an agreement generally may be evidenced by the parties' lease . . . ." Id., 851 n.4. The lease between the Vaszils and the landlord was before the trial court.[3]

---

[3] By construing the lease in accordance with the rules of construction discussed in part II, I conclude that there is no express agreement between the insured and the Vaszils regarding the plaintiff's right of subrogation and that the following provisions of the lease create, at best, an ambiguity in that regard:

"The words 'you', 'your', and 'yours' mean the Tenant: Joseph Pellerito, Brian Vaszil, John Gengras and Dylan Mark.

"We agree to lease to you, and you agree to lease from us, Apartment Number 19-5 . . . .

"5. CARE OF APARTMENT. You will keep the Apartment, surrounding areas and all fixtures and appliances in a clean and safe condition and remove all ashes, garbage, rubbish and other waste in a clean and safe manner to the place provided by us. You will use all electrical, plumbing, heating, air conditioning and other facilities and appliances in a reasonable manner. You will not destroy or damage any part of the Apartment or any of our furnishings or appliances in the Apartment, nor remove any of our furnishings or appliances from the Apartment. . . .

"8. DAMAGE TO APARTMENT. You will not have to pay rent for any time that your use and enjoyment of the Apartment is substantially affected because the Apartment or the building is damaged by fire or other casualty. However, you will pay rent if you caused the damage or destruction or if you continue to occupy any portion of the Apartment. . . .

"9. CONDEMNATION. If any part of the building is condemned, we shall have the right to cancel this lease. If we decide to cancel the lease, we will give you notice within thirty . . . days after the date of the condemnation. The lease will end on the date that we give you in our notice. . . .

"11. REMOVAL OF PROPERTY. When this lease ends, you will leave the Apartment and remove all your property and the property of others and leave the Apartment in good and clean condition and repair any damage caused by yourself or others.

"12. RULES AND REGULATIONS. You agree to comply with the following rules and regulations: a) You will not block any sidewalks, halls, or stairways and you will not use them except to go to and from the Apartment. b) You will not place radio or TV aerials, wires or other electrical wires or connections anywhere without our approval. c) You will not fasten anything

"A lease is a contract." (Internal quotation marks omitted.) *Central New Haven Development Corp.* v. *La Crepe, Inc.*, 177 Conn. 212, 214, 413 A.2d 840 (1979). A lease is subject to the same rules of construction as other contracts. *Scoville* v. *Shop-Rite Supermarkets, Inc.*, 86 Conn. App. 426, 432, 863 A.2d 211 (2004), cert. denied, 272 Conn. 921, 867 A.2d 838 (2005). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . .

to the walls, floors, doors, windows, appliances or fixtures in the Apartment. d) You will not drill any holes in the Apartment or use any nails, hooks or screws on any walls, floors, doors, windows, appliances or fixtures in the Apartment. e) You will not place any sign or advertisement on the outside or inside of the building. f) You will not throw, drop, hang or shake anything from any windows, balconies, halls or stairways. g) *You will not bring into the Apartment anything which increases costs for fire or liability insurance.* h) You will not use any electrical appliances that are dangerous or that do not use ordinary electrical plugs. i) You will not install any locks on the doors leading to the Apartment, and you will not change any existing locks. j) You will not keep any animals or pets in the Apartment.

"13. DEFAULT. You will be in default under this lease if: a) You do not make a payment of rent within ten . . . days after it is due; or b) You violate or do not do any of the things you agree to do under this lease . . . . If you are in default under this lease, we may send you a notice and cancel this lease which will end on the date in the notice. If you do not do any of the things you promise to do under this lease, you will pay us the amount that we pay to do the things that you do not do. You will pay us the total rent stated in Section 2 of this lease less the amount of rent already paid. You will also pay us interest on any amount you owe us which is past due at the rate of twelve percent . . . per year. If you are in default under this lease and if we refer the matter to an attorney to evict you, you will pay us a reasonable attorney's fee. If we refer this matter to an attorney because you do not pay the amount you owe us when it is due, you will pay us an attorney's fee not in excess of fifteen percent . . . of the amount of the judgment we obtain against you. You will also pay us all of our other collection costs and expenses. . . .

"16. SECURITY DEPOSIT. You will deposit with us $1,500.00 before May 1, 2001 as security deposit. *If you are in default under this lease, we may use the security deposit to pay the rent or other money you owe us under this lease. . . .*" (Emphasis added.)

When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . On the other hand, [w]hen an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent. . . . Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion. . . . A court will not torture words to import ambiguity when the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citations omitted; internal quotation marks omitted.) *Rund* v. *Melillo*, supra, 63 Conn. App. 220. "When there is ambiguity, we must construe contractual terms against the drafter." (Internal quotation marks omitted.) Id., 222.

*DiLullo* requires an *express agreement* between a landlord and tenant for the landlord's insurer to bring a successful action against a negligent tenant. Black's Law Dictionary defines the word "express" as "[c]lear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. . . . Declared and distinctly stated. Made known distinctly and explicitly, and not left to inference. . . . Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct. The word is usually contrasted with 'implied.' " Black's Law Dictionary (6th Ed. 1990).

Very simply, as the majority acknowledges, the lease does not contain the word subrogation or any express language that the plaintiff had the right to proceed against the Vaszils for damage negligently caused to the landlord's property. That acknowledgment alone is sufficient to affirm the judgment of the trial court. The majority, however, has scrutinized the contract to infer an agreement between the landlord and the Vaszils regarding subrogation. *DiLullo* does not permit the

inference of such an agreement. At best, the lease is ambiguous as to a tenant's responsibility for damage negligently caused. The lease uses the words apartment, building, damage and destruction. It enumerates certain rules, including one that the tenant is not to do anything that would increase the cost of insurance. See footnote 3 ("12. RULES AND REGULATIONS."). In case of a tenant's default, the landlord reserved the right to keep the security deposit to pay for rent or other money owed under the lease. See footnote 3 ("16. SECURITY DEPOSIT."). One equally could infer from the provisions of the lease that a tenant's liability is limited to the amount of his or her security deposit. Such a reasonable inference is far from an express agreement between the landlord and tenant that the insurer has a right to subrogation for losses paid to its insured.

## III

## RULES PERTAINING TO SUMMARY JUDGMENT

When ruling on a motion for summary judgment, a court determines whether there are genuine issues of material fact and does not sit as the trier of fact to decide the genuine issues of material fact. In deciding the appeal, the majority reframed one of the issues raised by the plaintiff,[4] thereby creating a question of

---

[4] The plaintiff's brief listed two issues in its statement of issues: "1. Did the trial court err in holding that the plaintiff, which paid its insured, the owner of an apartment building, for damages caused to the building by the negligent . . . conduct of a tenant, was not entitled to pursue subrogation against the tenant because the *written lease terms did not create an express agreement* between the apartment owner and the tenant that the tenant would be financially responsible for damage he caused?

"2. Did the trial court err in its application of the public policy against economic waste and in holding that the plaintiff, which paid its insured, the owner of an apartment building, for damages caused to the building by the negligent . . . conduct of a tenant, was not entitled to pursue subrogation against the tenant who was insured against liability for damage he caused under his parents' homeowners insurance policy?" (Emphasis added.)

fact, i.e., "whether the language of the defendants' lease with the landlord was sufficient to permit the landlord's insurance company to subrogate against the defendants when the lease contained no express provision that the insurance company would have that right." On appeal, the plaintiff framed its first issue, concerning the construction of the contract, in the language of the trial court that ruled on the motion for summary judgment. The trial court's language is faithful to the language of the rule in *DiLullo*, i.e., "express agreement." Furthermore, footnote 3 of the majority opinion highlights the ambiguity within the lease. The unresolved factual question noted in footnote 3 concerns the extent to which the lease permits the landlord to pursue a tenant for damage to property, that is, whether the landlord's right is limited to damage to the apartment or extends to the destruction of the building housing numerous apartments. Damage and destruction are not defined by the lease. The default provision of the lease indicates that the landlord will look to the $1500 security deposit if the tenant violates provisions of the lease. See footnote 3 ("16. SECURITY DEPOSIT."). Given the question concerning the extent of a tenant's responsibility for damage or destruction, the lease not only fails to let a tenant know that the insurance carrier has the right to subrogate for any loss benefits paid, but it also does not put a tenant on notice that he or she should obtain insurance in the event of a catastrophic loss. This is particularly true where the lease implies that the landlord has protected itself by having procured its own insurance. See footnote 3 ("12. RULES AND REGULATIONS.").

I recognize that if this court were to conclude that a motion for summary judgment involved a genuine issue of material fact decided by the trial court, the remedy would be to reverse the judgment and to remand the matter for further proceedings. Practically speaking, the outcome would be no different from what the major-

ity has ordered; but the legal effect of the majority's decision is inconsistent with *DiLullo* v. *Joseph*, supra, 259 Conn. 850, which requires an express or specific agreement between the landlord and the tenant regarding an insurer's right of equitable subrogation. Not only did the majority take on the job of construing an ambiguous contract on a motion for summary judgment, it misapplied the substantive law of equitable subrogation regarding a tenancy.

For the foregoing reasons, I dissent, respectfully.