AMERICAN STATES INSURANCE COMPANY *v.*
ALLSTATE INSURANCE COMPANY
(AC 25913)

McLachlan, Harper and Peters, Js.

---

Argued November 17, 2005—officially released February 28, 2006

*William J. Melley III*, for the appellant (defendant).

*John W. Lemega*, with whom was *Aubrey E. Ruta*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, Allstate Insurance Company, appeals from the judgment of the trial court awarding the plaintiff, American States Insurance Company, the sum of $108,851.68, plus interest in the amount of $97,501.03 pursuant to General Statutes § 37-3a. The defendant claims that the court improperly (1) determined that the plaintiff had standing to bring this action, (2) applied Connecticut law rather than Florida law in the interpretation of the insurance policy at issue, (3) determined that the defendant breached its duty to defend and (4) awarded prejudgment interest pursuant to § 37-3a. We agree with the defendant's second claim and, accordingly, reverse the judgment of the trial court.

The parties have stipulated to the following facts. On June 14, 1994, Victoria M. O'Neill and Patricia Sargent[1] were the owners of a 1989 Ford Thunderbird. At that time, the vehicle was registered in Florida and insured under an automobile liability insurance policy issued by the defendant. O'Neill and Sargent were named insureds under the defendant's policy, which had been purchased and issued in Florida. The premium statements for the defendant's policy were mailed to Sargent's

---

[1] O'Neill is the mother of Sargent.

address in Connecticut. Sargent was domiciled in Connecticut and held a Connecticut driver's license. O'Neill was domiciled in Florida but, for several years, had spent three to five months each year in Connecticut with Sargent.

On June 14, 1994, Sargent was operating the Thunderbird in Lebanon with O'Neill as her passenger. Sargent collided with a stationary object, causing injuries to O'Neill. On November 15, 1994, O'Neill brought an action against Sargent in the Connecticut Superior Court (O'Neill action) for the injuries she sustained in the motor vehicle accident. The defendant denied coverage under its policy and refused to defend or indemnify Sargent in the O'Neill action. At that time, Sargent also was insured under a personal umbrella liability insurance policy issued by the plaintiff. The plaintiff provided a defense to Sargent in connection with the O'Neill action. The O'Neill action proceeded to arbitration, which resulted in an award to O'Neill in the amount of $122,500. The arbitration award was neither confirmed nor vacated by the Superior Court. The plaintiff paid the amount of the arbitration award to O'Neill on October 11, 1995.

In the present action, the plaintiff sought a judgment declaring that the defendant was required to provide a defense and indemnification to Sargent, pursuant to the defendant's liability insurance policy issued to Sargent in 1994, and indemnification to the plaintiff in the amount of the payment it made to O'Neill in satisfaction of the arbitration award entered in O'Neill's favor against Sargent. The plaintiff and the defendant filed motions for summary judgment and submitted a stipulation of facts to the court. The court, *Hon. Jerry Wagner*, judge trial referee, issued its memorandum of decision on November 13, 2003, granting the plaintiff's motion for summary judgment and denying the defendant's motion for summary judgment. After a hearing in damages,

the court, *Bryant, J.*, rendered judgment awarding the plaintiff damages and interest pursuant to § 37-3a. This appeal followed.

"Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Thus, because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary." (Citations omitted; internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Vaszil*, 89 Conn. App. 482, 485–86, 873 A.2d 1030, cert. granted on other grounds, 275 Conn. 911, 882 A.2d 673 (2005). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002).

I

The defendant claims that the court improperly concluded that the plaintiff had standing to bring an equitable subrogation claim against the defendant. Specifically, the defendant argues that the plaintiff acted as a volunteer in defending and settling the O'Neill action. We disagree.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Fleet*

*National Bank* v. *Nazareth,* 75 Conn. App. 791, 793, 818 A.2d 69 (2003). The plaintiff claims that its standing to seek declaratory relief and reimbursement for indemnity and defense payments is predicated on the doctrine of equitable subrogation.

"[T]he right of [equitable] subrogation is not a matter of contract; it . . . takes place as a matter of equity, with or without an agreement to that effect." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Vaszil,* supra, 89 Conn. App. 486. "The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." (Internal quotation marks omitted.) Id., 488–89. As now applied, the doctrine of equitable subrogation "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. . . . Furthermore, [s]ubrogation is a highly favored doctrine . . . which courts should be inclined to extend rather than restrict." (Internal quotation marks omitted.) Id., 486–87.

If the plaintiff paid the amounts it now seeks to recover as a volunteer, it has no right to equitable subrogation and, therefore, no standing to bring the present action. The defendant argues that the plaintiff must have been compelled to pay the arbitration award in order to seek indemnification from the defendant. Citing to a Superior Court decision, *Allstate Ins. Co.* v. *Lerer,* Superior Court, judicial district of New Britain, Docket No. 502559 (January 16, 2001), and various North Carolina cases, the defendant maintains that a judicial determination of liability was required in order for the plaintiff to have standing to pursue its subroga-

tion claim against the defendant. As stipulated by the parties, the arbitration award in the O'Neill action was not confirmed by the Superior Court.

In the present case, the defendant, as Sargent's primary insurer, refused to provide her with a defense in the O'Neill action, claiming there was no coverage under the policy. The plaintiff, under its personal umbrella policy with Sargent, had a contractual obligation to provide coverage for claims not covered by Sargent's other policies. The plaintiff, when advised of the defendant's refusal to defend Sargent and the seriousness of the claimed injuries, understood that it was obligated to defend Sargent as her secondary insurer.[2] In view of the broad duty to defend; *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 324, 714 A.2d 1230 (1998); the plaintiff was not acting as a volunteer when it undertook Sargent's defense after the defendant denied coverage.

Further, although there is no appellate case law in Connecticut expressly addressing the issue, we conclude that the arbitration award did not have to be confirmed by a judicial authority before the plaintiff could bring a claim for equitable subrogation against the defendant. We find the United States District Court's reasoning in *Westport Ins.* v. *St. Paul Fire & Marine Ins. Co.*, 375 F. Sup. 2d 4 (D. Conn. 2005), to be persuasive. "The rule adopted in [*Allstate Ins. Co.* v. *Lerer*, supra, Superior Court, Docket No. 502559] appears inconsistent with such an encompassing duty to defend, as it would discourage [insurers] from defending their insured where there is a dispute over coverage, or

---

[2] The defendant's underlying policy provided coverage for bodily injury liability of $100,000 per person and $300,000 per occurrence. The plaintiff reasonably could have concluded that O'Neill's claimed injuries could exceed the amount of the primary coverage and that its participation in the O'Neill action also would be necessary. In fact, the amount of the arbitration award did exceed the defendant's $100,000 limit.

would protract and delay the resolution of a claim against an insured by requiring court adjudication of coverage prior to payment of a claim. Thus, this Court believes that [Connecticut law] would permit subrogation actions where an insurer pays a loss for which it reasonably may be liable, even if its obligation under its policy is in dispute. See [16 G. Couch, Insurance (3d Ed. Rev. 2000)] § 223:27 ('[I]nsurance payment is not voluntary if it is made with reasonable or good faith belief in obligation or personal interest in making that payment. This standard is met when an insurer has acted in good faith to discharge a disputed obligation, even if it is ultimately determined that its insurance policy did not apply.')." *Westport Ins.* v. *St. Paul Fire & Marine Ins. Co.*, supra, 9.

As a matter of law, we conclude that the plaintiff did not act as a volunteer when it defended Sargent in the O'Neill action or when it paid the amount of the arbitration award to O'Neill. We conclude that the plaintiff had standing to bring its equitable subrogation claim against the defendant.

II

The defendant claims that the court improperly applied Connecticut law rather than Florida law with regard to the interpretation of the defendant's automobile liability insurance policy. We agree. Because the resolution of that issue is dispositive of the appeal, we do not reach the defendant's remaining claims.

In *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 413, 703 A.2d 1132 (1997), on appeal after remand, 252 Conn. 774, 750 A.2d 1051 (2000), our Supreme Court adopted the "most significant relationship" approach taken in 1 Restatement (Second), Conflict of Laws § 188 (1971), to analyze choice of law issues involving contracts. The

determination involves an interplay among §§ 193, 188 and 6 of the Restatement.

In the present case, the defendant's policy does not contain a choice of law provision. "Where there is no choice of law provision in the contract, the general rule to be applied is that of § 188. Section 188, in turn, directs us to other provisions for specific types of contracts. With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second), supra, which creates a rebuttable presumption in favor of the state where the insured risk is located. In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6 (2) of the Restatement (Second), supra, provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6 (2), that interest will not defeat the § 193 presumption unless it is sufficiently compelling." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 252 Conn. 774, 781–82, 750 A.2d 1051 (2000).

We therefore begin our analysis with 1 Restatement (Second), supra, § 193, which provides in relevant part: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy . . . ." Comment (b) to § 193 provides that in determining the principal location of risk in connection with an automobile liability policy, the parties usually will know beforehand "where the automobile will be garaged at least during most of the period in question." Id. The facts are undisputed that the insured automobile, the 1989 Ford Thunderbird, was garaged in Florida when O'Neill was

residing at her home in Florida. O'Neill was domiciled in Florida, but spent three to five months each year in Connecticut with Sargent. The automobile was in Connecticut for less than six months of the year. According to the stipulation of facts provided to the court, "O'Neill testified that the vehicle was primarily garaged or kept [in Florida]." It must be concluded, therefore, that the principal location of the insured risk was Florida.

Having made that conclusion, we must determine whether Connecticut has a more significant relationship under the principles stated in § 6 of the Restatement (Second), supra, to the transaction and the parties, in which event Connecticut law would be applied. Section 6 (2) sets forth seven considerations in determining which of the two states has the more significant relationship: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." 1 Restatement (Second), supra, § 6.

Section 188 (2) of the Restatement (Second), supra, sets forth the contacts to be taken into account in applying the principles of § 6: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

For this court to conclude that Connecticut law rather than Florida law should be applied with respect to the

interpretation of the defendant's policy, we would have to conclude that the insured vehicle was garaged primarily in Connecticut or that Connecticut has a *more* significant relationship to the parties and the transaction than does Florida. It is not disputed that the insured vehicle was garaged in Florida for more than six months of the year. Because Florida is the primary location of the insured risk under § 193 of the Restatement, Connecticut's interest must outweigh Florida's interest and must be sufficiently compelling to trump the presumption of § 193. See *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 252 Conn. 782.

In applying the criteria set forth in §§ 6 (2) and 188 (2), we note, once again, that the undisputed facts indicate that the defendant's policy was purchased and issued in Florida, that O'Neill was domiciled in Florida and visited her daughter for three to five months a year in Connecticut and that the insured vehicle was located primarily in Florida. With respect to Connecticut's contacts, the accident took place in Connecticut, Sargent is domiciled in Connecticut, the premium statements for the defendant's policy were sent to Sargent's Connecticut address and the O'Neill action was commenced in Connecticut. On the basis of those facts alone, Connecticut does not have such a significant relationship to the transaction or the parties so as to trump the application of Florida's law.

It is then necessary to look to the relevant policy interests of both Connecticut and Florida to determine if Connecticut has an overriding policy interest in applying its law. The defendant's policy contains an endorsement that excludes automobile liability insurance coverage for "bodily injury to you or any resident of your household related to you by blood, marriage or adoption." The definition section of the policy defines "you" as "the policyholder named on the declarations

page and that policyholder's resident spouse." *Sargent* and O'Neill are both listed as policyholders on the declarations page. The defendant denied coverage on the basis of the endorsement. Federal and state courts in Florida have determined that this exclusion is valid. *Reid* v. *State Farm Fire & Casualty Co.*, 352 So. 2d 1172, 1173 (Fla. 1977); see also *Lumbermens Mutual Casualty Co.* v. *White*, 896 F. Sup. 1209, 1212 (M.D. Fla. 1995), aff'd, 92 F.3d 1199 (11th Cir. 1996). The plaintiff argues that the exclusionary language in the endorsement would not be valid in Connecticut and that Connecticut's public policy overrides that of Florida under those circumstances. We disagree.

Connecticut law does not prohibit the exclusion of the named insured or resident relatives from coverage under automobile liability insurance policies. General Statutes § 38a-335 (d) provides: "With respect to the insured motor vehicle, the coverage afforded under the bodily injury liability and property damage liability provisions in any such policy shall apply to the named insured and relatives residing in his household *unless* any such person is specifically excluded by endorsement." (Emphasis added.) There is no public policy against such exclusions; they must, however, specifically exclude the insured or resident relative in order to be valid. Although the parties in the present case disagree as to whether the defendant's policy "specifically" excludes O'Neill and Sargent from coverage, the fact remains that our legislature does not prohibit such exclusions.

In considering all of those factors, we conclude that the presumption of § 193 of the Restatement, i.e., that Florida law should be applied because it is the principal location of the insured risk, has not been rebutted by the factors considered under §§ 6 (2) and 188 (2) of 1 Restatement (Second), supra. Florida has the most significant relationship with the contract claims and,

accordingly, Florida law should be applied with respect to the interpretation of the defendant's policy.

Applying Florida law, we conclude that O'Neill, as a policyholder, was excluded from bodily injury coverage under the endorsement of the defendant's policy. Under Florida law, the defendant was not required to provide a defense and indemnification to Sargent in connection with the O'Neill action and is not required to indemnify the plaintiff for the amount of the payment it made to O'Neill in satisfaction of the arbitration award. See *Lumbermens Mutual Casualty Co.* v. *White*, supra, 896 F. Sup. 1213.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.